SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY V.
JAMES D. MONTGOMERY.

Decided February 27, 1903.

**1.—Railroads—Footpath Across Tracks—Invitation.**

The mere use by the public, without objection, of a footpath across railway tracks is not sufficient to authorize the inference of an invitation, and those using such footway are mere licensees who must accept the path as they find it, the company being under no more duty to maintain it in a safe condition than a citizen with reference to a footpath across his premises.

**2.—Same—Acquiescence—Liability Not Shown.**

A railroad company had dedicated to public use a crossing, consisting of a driveway and footpaths on each side thereof, but the city authorities had never established a crossing there. Between the driveway and the footpaths there was a space across the ends of which the company had placed a chain, but pedestrians had without objection for a long time been in the habit of crossing these spaces diagonally. Held, that no duty was imposed on the company to keep such spaces in a safe condition at the place where crossed by pedestrians, and one using the path made by them and injured by an obstruction resulting from such use was not entitled to recover.

Appeal from the County Court of De Witt. Tried below before Hon. C. A. Summers.

*Proctors*, for appellant.

*Price, Green & Green* and *Davidson & Bailey*, for appellee.

GILL, ASSOCIATE JUSTICE.—This was an action for damages for personal injuries brought by J. D. Montgomery against the San Antonio & Aransas Pass Railway Company. A trial by jury resulted in a verdict and judgment for plaintiff in the sum of $750, from which the defendant has appealed.

Plaintiff claimed to have been injured while crossing defendant's right of way at a crossing, which it was the duty of defendant to maintain in a safe condition for pedestrians, and his injuries are alleged to be due to the negligence of the company in allowing an iron spike to protrude above the general level of the path, causing him to stumble and fall.

Defendant answered by general denial and plea of contributory negligence. The facts are as follows: The defendant's railroad runs through the town of Yoakum, and it owns in fee simple its right of way through said town. The right of way is 200 feet wide. Just west of and parallel with this right of way is Front street. On the east side is South street, also parallel with and adjacent to it. Gonzales street runs from an easterly direction to South street, with which it connects. On the opposite side of the railroad from this connection Nelson street, running from the west, connects with and intersects Front street. Between these two points or intersections the railroad company has opened and established a crossing for vehicles and pedestrians. The city was laid out

subsequent to the construction of the railroad, and no crossing at the point in question was ever condemned by the city authorities. So far as appears from the official map of the city, Gonzales street does not cross the right of way, but stops at its intersection with South street. Nelson street stops in like manner on the opposite side of the right of way. The crossing in question was opened and established by the company many years ago, and it has since maintained it for use by the public.

The crossing for vehicles was fifty-six feet in width. At each end of this crossing the company had established gates which could be raised or lowered at the will of watchmen stationed there for the purpose, and were designed to prevent the crossing of vehicles when trains were approaching. On the north and south sides of these crossings the company had established a crossing for pedestrians. Each of these were seven and one-half feet in width, which was ample space for the accommodation of the inhabitants who used that point as a crossing.

The wagon crossing and each of the foot crossings were in good condition at the time of the accident complained of, and no complaint is made against them. Between the wagon crossing and each of these footways was a space across the ends of which the company had stretched chains extending from the edge of the wagon way to the edge of each footway. In these spaces were the stands on which the gates were swung, also switch stands, as several of defendant's tracks came together at that point. These spaces were not designed to be used by the public, and this fact was plainly indicated by the chains above mentioned, as well as the presence of the two footways, which were distinct and smoothly graveled, and each of which lead, without obstruction, directly across the tracks and right of way. The right of way at this point separated a large part of the residence portion of the city from the business part of it, and at least 75 per cent of the population crossed at this point. Those who crossed on foot had been in the habit of going around the end of the chains, walking diagonally across the space between the footways and the wagon crossing, proceeding diagonally across the latter, and thus reaching not only the opposite side of the right of way, but the opposite side of the crossing from the point of approach. About 75 per cent of the pedestrians who crossed pursued this course, and had been doing so for years without protest from defendant, or any effort on its part to prevent it. In this way a distinct path was formed, leading from a point in the footpath at the northeast corner of the crossing diagonally across the spaces above mentioned, across the wagon way to a point in the footpath on the southwest corner of the crossing.

Plaintiff, whose home was on the west side of the railway, had been traveling this path almost daily since 1898. On January 11, 1902, while pursuing this course, plaintiff struck his foot against an iron spike which protruded about three inches above the level of the path, fell forward, and struck against one of the gate stands, whereby he sustained the injury complained of. The point where the spike protruded was not in

the footway, nor in the wagon way, but was in the space fenced off by the chains.

Defendant contends, among other things, that the judgment should be reversed and rendered for appellant because, under the facts, appellant did not owe to plaintiff the duty of maintaining in a safe condition the path so made by public use. This assignment in our opinion presents the question which must determine this appeal, and is therefore the only one which we will discuss.

The facts show, we think, beyond question that the defendant had by its acts dedicated the crossing in question to the public use, and it is estopped to defend on the ground that the city had never formally condemned and established a crossing at that point. This being true, it owed to the public thus invited to use it the duties usually imposed upon railway companies with reference to established crossings. But it does not follow from this that the company owed any duty to appellee with reference to the maintenance of the space between the distinctly marked wagon crossing and the equally distinct footways. The company owned its right of way at the point in question, and (the city authorities having failed to establish a crossing there) it might dedicate to public use as much or as little of this space as it chose. The wagon way was unmistakably dedicated to the public. So also were the footways. But the space cut off by the chains was as unmistakably reserved.

Plaintiff contends that the long use by the public of the path across the space clothed him with the right to use it, and at the same time imposed upon the company the duty to maintain it in a reasonably safe condition. We do not think the proposition sound. The duties of a railway company with reference to the maintenance of a walkway across its premises do not differ from the duty of a citizen as to a walkway across his premises.

If the public should habitually pass across a vacant lot belonging to an individual without protest on his part, and this general use was known to him, it would be clearly his duty to refrain from digging pitfalls or laying traps in the path thus established, and if he should conclude to use dangerous machinery over or in proximity to such path, his knowledge of the use to which it was put would impose on him the duty to keep a reasonable lookout for those using the path in order to avoid injuring them. But we have found no authority which holds that it would be the duty of such owner to maintain the path in a safe condition; to inspect it after each flood and fill or bridge the ditches, or to repair the damage to it occasioned by its daily use. Such a doctrine would, in effect, impose a heavy penalty on good nature. Mere use by the public without objection by the owner is not sufficient to authorize the inference of an invitation. In such a case the user of the path is a licensee who must accept the premises as he finds them, but in the case of a railway company the duty of lookout is imposed in the operation of its trains because the situation carries with it the knowledge that some member of the public is likely to be upon the path at any time, and the

company is not permitted in the operation of its trains to ignore this knowledge.

The true distinction seems to be this: A mere passive acquiescence by an owner in a certain use of his lands by others involves no liability, but if he directly or by implication induces others to enter on and pass over his premises he thereby assumes an obligation that they are in a safe condition and suitable for such use, and for a breach of this obligation he is liable in damages to one injured thereby. This liability arises at common law, and has no connection with the duties imposed by statute upon railway companies with reference to public crossings. Thus, the keeper of an inn or a shop or store to which the public are expected to come and deal, must keep his premises in a reasonably safe condition, for it is clear that the public are expected to use it and are impliedly invited to do so. But in the case first stated the responsibility of finding a safe and secure passage is thrown upon the user.

That the spaces between the wagon way and footways had never been dedicated to public use is shown by the undisputed facts, and it appears with equal clearness that the company had extended no invitation, either express or implied, to the public to use them as a walkway. Yet the plaintiff propounds the proposition that the company, by its silence and failure to protest, assumed the duty to repair this path, even when its dangerous condition was the result of wear by the footsteps of the public which daily used it. If the doctrine is sound, a like duty rests upon every owner of unfenced lands who acquiesces in the use of such lands for a neighborhood road, and to such a proposition we can not subscribe. The authorities cited below tend to sustain the views we have announced. 8 Am. and Eng. Enc. of Law, 425, 426; Railway Co. v. Warner, 88 Texas, 647; Sweeney v. Railway Co., 10 Allen, 368.

Because the facts are undisputed and no liability shown, the judgment is reversed and judgment here rendered for appellant.

*Reversed and rendered.*