## GULF, C. & S. F. RY. CO. v. GARDNER et al. (No. 6780.)

(Court of Civil Appeals of Texas. Austin. Oct. 22, 1924.)

**1. Statutes ⊜⇒123(4)—Embodiment of article in the Revised Statutes construed as reenactment thereof without reference to original caption.**

In so far as Rev. St. art. 1068, is in conflict with caption of original act (Laws 1897, p. 216), defining duty of railroads, "when their roadbeds and rights of way are condemned for street purposes," it should be held unconstitutional rather than that its meaning should be limited by the caption, and therefore its embodiment in the Revised Statutes constituted a reenactment of the article without reference to original caption.

**2. Railroads ⊜⇒303(2)—Company permitting public use of crossing held liable for negligent maintenance.**

Where railroad company voluntarily permitted public use of its right of way for street crossing, it therefore waived failure to formally condemn it for public use, and is liable for negligent maintenance thereof under Rev. St. art. 1068, as though property had been formally dedicated.

**3. Trial ⊜⇒350(7)—Refusal to submit special issues relating to contributory negligence of pedestrian injured at crossing held reversible error.**

In action by pedestrian for injuries from hole in railroad's right of way at street crossing, court's refusal to submit special issues concerning contributory negligence of plaintiff in failing to see defect in crossing, which plaintiff crossed daily, *held* reversible error.

**4. Damages ⊜⇒216(8)—Refusal of requested instruction eliminating element of damages which plaintiff had not proved held error.**

In personal injury action, where plaintiff alleged as element of damages her decreased earning capacity in millinery store, but did not show whether business was profitable, or what her earnings were, court's refusal of defendant's requested charge eliminating any damages as to such item was error.

**5. Trial ⊜⇒350(6)—Special issues as to railroad's negligence in maintaining crossing held properly framed.**

In action for injuries to pedestrian from hole in railroad's right of way at street crossing, special issues as to railroad's negligence in permitting holes to remain in right of way without limiting such issues to particular portion thereof *held* proper, where testimony confined to portion dedicated to public use, and evidence showed that hole was located on traveled portion thereof.

**6. Railroads ⊜⇒347(7)—Admission of testimony as to general condition of railroad's right of way at street crossing not error, where limited by other evidence.**

In action for injuries to pedestrian from hole in railroad's right of way at street crossing, admission of testimony of several witnesses as to general condition of right of way was not error, where testimony of plaintiff and others showed that hole was located in traveled part of right of way.

**7. Appeal and error ⊜⇒1052(8) — Railroads ⊜⇒347(7)—Evidence as to existence of defects in railroad's right of way several weeks before injury at street crossing held admissible and harmless, in view of other evidence.**

In action for injuries to pedestrian from hole in railroad's right of way at street crossing, witnesses' testimony that seven weeks before he had struck a hole while riding in an automobile was admissible in corroboration of plaintiff, in view of conflicting evidence, and, if error, was harmless; plaintiff's cause being abundantly supported by other testimony.

Appeal from District Court, Lampasas County; Lewis H. Jones, Judge.

Action by Mrs. T. A. Gardner and another against the Gulf, Colorado & Santa Fé Railway Company. From judgment for plaintiffs, defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, Roy L. Walker, of Lampasas, and Lee, Lomax & Wren, of Fort Worth, for appellant.

A. L. Curtis, of Belton, for appellees.

McCLENDON, C. J. The appellees, Mrs. T. A. Gardner and her husband, T. A. Gardner, recovered a judgment in the district court of Lampasas county against appellant, Gulf, Colorado & Santa Fé Railway Company, for $15,000 as compensatory damages for personal injuries which Mrs. Gardner sustained as a result of stepping into a hole at a point where Elm street crosses the right of way of appellant in the town of Lometa. The appeal is from this judgment. The case is briefed under 10 propositions, supported by 15 assignments of error, which we will consider in the order of their presentation.

The first 4 propositions are predicated up-

on the theory that under the uncontradicted evidence there was no duty resting upon appellant to keep the street in repair at the point where Mrs. Gardner was injured. The facts in this regard follow:

The land on which the town of Lometa is situated was formerly owned by appellant. In 1885 appellant's line was extended through Lampasas county, and in 1886 appellant caused to be recorded in Lampasas county a plat of the town under the name of Montvale. This plat embraced a rectangular tract of land, intersected by the railway right of way which ran approximately north and south. This right of way was 200 feet wide, and was designated on the plat by dotted lines. Immediately adjoining the right of way on each side were streets, named, respectively, East Railway and West Railway; to the east and west of these streets the town site was platted into lots and blocks, the streets running north and south, parallel with the railway right of way, and east and west at right angles to it. The plat did not show that any of the streets crossed the right of way. The town of Montvale was later incorporated, and the incorporation afterwards abandoned. After this the town was incorporated under the name of Lometa. The facts show, without contradiction, that none of the streets in the town crossed the railway right of way except Main street, which was south of appellant's depot, and Elm street, which was north of the depot. The main portion of the town was west of the track. Elm street was shown, without controversy, to be a regularly traveled public street, and had been such for many years, just how long the evidence does not show, but the witnesses testifying thereto show, without controversy, that as early as 1912 practically the same condition existed as at the present. The railway company had placed crossing signs where Elm street crossed its right of way, and had graded and graveled the street at this point. Elm street, as shown by the plat, was 80 feet wide, but there were no sidewalks across the railway right of way, and the evidence showed that pedestrians and vehicles used the traveled part of the roadway indiscriminately.

[1, 2] Appellant contends that Revised Statutes, art. 1068, which imposes the duty upon railway companies to place and keep that portion of their right of way over and across which any public street of any incorporated town or village may run, in proper condition for the use of the traveling public, is limited in its application to such portions of such right of way as has been condemned by the city for street purposes. This contention is based upon the caption to the original act (Laws of 1897, p. 216), which states the purpose of the act to be to authorize the condemnation of rights of way and "to define the duties of railroad companies when their roadbeds and rights of way are con-

demned for street purposes." The language of article 1068 is certainly not ambiguous nor open to construction, and, in concluding that as originally passed it had application only to such portion of the right of way as has been actually condemned, the question arises whether (conceding that in so far as it applies to the right of way where it is not condemned it is in conflict with the caption) it must be construed as limited by the caption or held unconstitutional in so far as it exceeds the purpose stated in the caption. If the article is to be construed as being limited in its meaning by the caption and as having read into it the expression, "when their roadbeds and rights of way are condemned for street purposes," then it would seem to follow, as contended by appellant, that the inclusion of the article in the Revised Statutes in the exact language of the original bill was merely a continuation of the article with the construction which should be given to it as originally passed. On the other hand, if the section was originally unconstitutional in so far as it exceeded the purpose designated in the caption, then its embodiment in the Revised Statutes constituted a re-enactment, and it should be construed without reference to the caption of the original act.

In the case of American Indemnity Co. v. Austin, 112 Tex. 251, 246 S. W. 1019, the Supreme Court, speaking through Chief Justice Cureton, uses the following language:

"To say that the citizen, in order to know the law by which his rights are to be determined, must go through the many volumes of session laws enacted by nearly forty different Legislatures, and examine the original acts, including the captions and repealing acts and clauses, is not to be seriously considered. The Roman citizen who had to read only 3,000 plates of brass, on which his laws were recorded, had, as compared to this, an easy undertaking. The session laws are for all practical purposes inaccessible to the average citizen, and the task of searching through them to ascertain the law an insurmountable one. These laws, as republished by Gammel, down to 1919 occupy nineteen huge volumes, aggregating approximately thirty thousand pages. And yet, unless the Revised Statutes constitute the law—are the law—citizens and courts alike will be compelled to seek it in the session acts of the Legislature.

"But the Revised Statutes, as we have seen, are the law, and are to be looked to with safety and confidence by the citizen; nor need one, under the rules of construction shown in the authorities cited, look into the original acts, except to explain ambiguities in the Code. The Revised Statutes of this state, when once adopted, become the entire law on the subjects they purport to cover, unless specially excepted, and any inquiry into matters of legislative procedure by which the original session acts were adopted, for the purpose of impeaching the constitutional integrity of that procedure, is wholly inadmissible."

It would seem that this language is peculiarly applicable to the present controversy. The article under discussion is certainly

plain, unambiguous, and not open to construction. To construe it now with reference to the original act would result in its being given a limited meaning which its language does not even suggest. One reading the article in the Revised Statutes would never suspect that it has application only to the right of way which has been condemned, and could give it no other interpretation than that it applies generally to all public street crossings. We are inclined to the view that, in so far as the article may be construed in conflict with the caption, it should be held unconstitutional rather than that its meaning should be limited by the caption, and therefore that its embodiment in the Revised Statutes constituted a re-enactment of the article without reference to the original caption.

We deem it unnecessary to discuss the question further, or to cite or review the authorities which may bear upon it, for the reason that we regard this particular issue as foreclosed by the decision in the case of Railway Co. v. Montgomery, 31 Tex. Civ. App. 491, 72 S. W. 616. In that case the Court of Civil Appeals, speaking through Judge Gill, say:

"The facts show, we think, beyond question, that the defendant had by its acts dedicated the crossing in question to the public use, and it is estopped to defend on the ground that the city had never formally condemned and established a crossing at that point. This being true, it owed to the public thus invited to use it the duties usually imposed upon railway companies with reference to established crossings. But it does not follow from this that the company owed any duty to appellee with reference to the maintenance of the space between the distinctly marked wagon crossing and the equally distinct footways. The company owned its right of way at the point in question, and (the city authorities having failed to establish a crossing there) it might dedicate to public use as much or as little of this space as it chose."

It is true that in that case the Court of Civil Appeals held that there had been no dedication to public use of the particular portion of the right of way on which plaintiff had been injured; but we regard that fact as unimportant in determining the effect of the decision. The court had for consideration the question of the application of the statute to a street which had been dedicated to public use, by the voluntary act of the railway company without formal condemnation proceedings, and, if the court had concluded that the statute had no application to such a street, it would unquestionably have based its decision upon that holding. But independently of whether the holding be regarded as a dictum, we regard the language quoted as expressing a correct principle of law. The purpose of the act of 1897 was to give to cities and towns the right to extend the public streets across the privately owned right of way of railway companies, and to require railway companies to maintain such

streets upon their right of way when so dedicated to public use. The railway company thus owning its right of way through an incorporated city or town unquestionably has the right to prevent the public from trespassing upon it, and can decline to permit the streets to be laid out or constructed across its right of way, unless condemned in the manner provided by law. Where such company voluntarily grants to the public the right to use as a public street its right of way, and invites the public to so use it, it should be held to have waived the formal condemnation of its property to public use, and be subject to all the duties imposed by law upon it, just as though the property had been formally condemned.

Appellant's fifth proposition complains of the definition of "proximate cause" given in the court's charge, and to the refusal to substitute therefor a definition contained in a special charge tendered by it. The charge complained of is in practically the identical language of those passed upon in Railway v. Jackson, 51 Tex. Civ. App. 646, 113 S. W. 628, and Railway v. Locker (Tex. Civ. App.) 264 S. W. 596, on the authority of which cases we overrule this proposition.

[3] Appellant's sixth proposition complains of the fourth special issue and the refusal of its requested issues Nos. 1 and 1a, which read, respectively, as follows:

"Special Issue No. 4. Do you find from the evidence that the plaintiff, Mrs. T. A. Gardner, in going upon and across said highway and crossing at the time and in the manner disclosed by the evidence, was guilty of contributory negligence as that term has been heretofore defined in this charge? Answer 'Yes' or 'No.'"

"Special Issue No. 1. Did plaintiff know, or in the exercise of ordinary care, could plaintiff have known, of the existence of the alleged hole or rough place, if any, in the street crossing?"

"Special Issue No. 1a. In attempting to walk over the street crossing with such knowledge of its condition, was the plaintiff guilty of contributory negligence as that term has been heretofore defined?"

Appellant in its answer pleaded as a separate and distinct defense contributory negligence, on the ground that Mrs. Gardner, prior to the time that she was injured, knew, or in the exercise of ordinary care should have known, of the condition of the crossing, and should have avoided stepping into the hole or rough place which it was alleged caused her injuries. The evidence showed that Mrs. Garner used the crossing daily in going from her residence to her place of business, and that she was acquainted with the condition in which the road then was. Under this state of the pleading and proof appellant was entitled to have the particular facts pleaded by it as a defense and supported by evidence submitted to the jury in the form of a special issue. The issue as given

was nothing more than a general issue on contributory negligence, and the issues refused grouped the particular facts supported by the pleadings and the proof. We hold that the refusal of the trial court to submit these special issues constituted reversible error under the following cases: Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Railway v. Miller, 112 Tex. 355, 247 S. W. 503; Railway v. Woods, 262 S. W. 229; Northern Texas Traction Co. v. Jenkins, 266 S. W. 175 not yet [officially] reported. There are numerous other cases to the same effect.

[4] Appellant's seventh proposition complains of the charge on the measure of damages and the refusal of a special charge upon the same subject. Appellee's pleadings and evidence show that Mrs. Gardner at the time of her injuries and sometime prior thereto was engaged in the millinery business. Appellees pleaded that her earning capacity was $2,000 a year; but there was no proof whatever which showed whether such business was profitable, and what her earnings therein were, if anything. The trial court instructed the jury that in assessing the damages they might take into consideration, among other things, "any impairment, if any, occasioned by such injury, if any, in her (Mrs. Gardner's) capacity to do and discharge the ordinary duties and pursuits of life." This portion of the charge was objected to by appellant on the ground that it was likely to have the effect of inducing the jury to consider the alleged issue of Mrs. Gardner's inability to work in the store, whereas there was no testimony warranting a finding that she sustained any pecuniary loss on that account.

Appellant also requested the following special charge:

"In connection with paragraph 11, you are instructed that in the consideration of plaintiff's incapacity, if any, to do and discharge the ordinary duties and pursuits of life, you will wholly disregard the allegations and proof with reference to her working in the store at Lometa."

We think the refusal of this special charge was error. Mrs. Gardner's earning capacity in the store was pleaded by her as one of the elements of damages for which she sought recovery. The proof showed that she engaged in that business, but did not furnish any basis of estimating what, if anything, her damage in that regard was. With the pleadings and the evidence in this condition, we think appellant had the right to have the jury instructed in such a way as clearly to eliminate any damage claimed by appellees on this item. The verdict in this case was large, but it is not complained of as being excessive, and, if such complaint were made, we doubt if it would be sustained. But even so, a valuable right of appellant was infring-

ed by the refusal of the trial court to eliminate from the jury's consideration the item complained of, and the effect of the court's failure was at least calculated to result in the rendition of a greater verdict than would otherwise have been rendered. We find it unnecessary to hold whether the error thus complained of would require a reversal as the case must be reversed for the error already pointed out. If the pleadings and evidence should be the same upon another trial, the requested charge should be given.

[5] Appellant's eighth proposition attacks the action of the court in overruling certain objections to the first and second special issues. These special issues read:

"Special Issue No. 1. Do you find from the evidence that the defendant permitted a hole or holes to be and remain in its roadbed and right of way over the street and across which the plaintiff was walking? Answer 'Yes' or 'No.'"

"Special Issue No. 2. Do you find from the evidence that the defendant, railway company, in permitting said hole or holes to be and remain in its roadbed and right of way over the street at said place, was guilty of negligence as that term has heretofore been defined in paragraph 6 of this charge? Answer 'Yes' or 'no.'"

The objection to these issues was that the injuries which Mrs. Gardner sustained were not caused by the general rough condition of the crossing for the full width of the 80-foot street and the entire length across defendant's right of way, but by reason of one particular hole which her testimony placed within 8 feet of defendant's track. The entire testimony was confined to the condition of that portion of the street over the right of way which the evidence without question showed had been dedicated to public use, and the testimony of Mrs. Gardner and others who in any way attempted to fix the location of the hole which caused her to fall showed that it was located in the traveled part of the street on defendant's right of way. Under this state of the evidence the special issues were, in our opinion, properly framed.

[6] Appellant's ninth proposition complains of the evidence of several witnesses testifying to the condition of the street, upon the same grounds as those upon which the objections to the first and second special issues were based, and for the same reason we overrule this proposition.

[7] Appellant's tenth and last proposition complains of the admission in evidence of testimony of Ernest Ashley to the effect that on October 15, 1922, some seven weeks before the accident, the automobile in which he was driving across the right of way on Elm street struck a hole next to the west rail of the main line. The particular objection made to this testimony was that the time of the occurrence thus testified to was too remote, and it was not shown either directly

or circumstantially that the hole concerning which the witness testified was the one which caused plaintiff's injury. The holes in the street which were testified to were what are commonly termed "chug holes" produced by constant heavy traffic over the road. The evidence was conflicting as to whether there were "chug holes" in the street at the time of the accident. It was a fair inference from the evidence that the condition complained of had existed for some time, if it existed at all. Under the circumstances, we think the testimony objected to was admissible, for what it was worth, in corroboration of the other testimony offered by plaintiffs. In any event, plaintiffs' cause was abundantly supported by other testimony, and the evidence complained of was hardly calculated to influence the jury upon this issue. The error, if any, was harmless.

For the error pointed out, the trial court's judgment is reversed and the cause remanded to that court for a new trial.

Reversed and remanded.