## GULF, C. & S. F. RY. CO. v. WOODS.
### (No. 6734.)

(Court of Civil Appeals of Texas. Austin.
April 16, 1924. Rehearing Denied
May 28, 1924.)

**1. Railroads ⬳303(1) — Duty under statute concerning crossings not defined by subsequent statute.**

Rev. St. 1911, art. 6494, relating to repair of crossings, *held* not intended to define meaning of article 6485, but rather to supplement it.

**2. Railroads ⬳303(1)—Duty to keep "crossing" in repair.**

Under Rev. St. 1911, art. 6485, and common law, it is duty of railway company not only to restore public road crossing to a proper condition, but to subsequently keep and maintain such crossing, including approaches thereto, in a safe and suitable repair (citing Words & Phrases, First Series, "Crossing").

**3. Action ⬳35—Statute giving remedy only cumulative of common-law remedy unless right to latter negatived by statute.**

Where a statute gives a remedy, it is only cumulative of common-law remedy unless statute either expressly or impliedly negatives or denies right to comon-law remedy.

**4. Statutes ⬳206—Duty to give effect to two provisions if it can be done by fair and reasonable construction.**

It is duty of court to give effect to two provisions of statutes, if that can be done by any fair and reasonable construction.

**5. Railroads ⬳303(4) — Duty to maintain bridge built in restoring public road held not to rest on railroad.**

Where railway changed channel of stream and destroyed old bridge to make way for its own track and bridge and constructed for county another bridge in restoring public road to its former condition, it was not duty of railway to keep bridge in repair, since burden of maintaining a bridge would have rested on county anyway.

**6. Appeal and error ⬳1071(2)—In action based on alleged negligence as to approach to crossing, finding as to proximate cause held not prejudicial.**

In action for defects in approach to crossing, finding that railroad was negligent in permitting guard rails of bridge to become defective was not reversible error in that railroad was not required to keep bridge in repair, where jury also found that proximate cause of accident was negligence in permitting hole to remain in road which railroad was under duty to keep in repair, hole being proximate cause of automobile striking guard rail and condition of guard rail being merely fortuitous condition.

**7. Railroads ⬳303(1)—Agreement of county to keep approach to railroad crossing in repair without consideration.**

Duty being imposed by Rev. St. 1911, arts. 6485, 6494, upon railroad to keep approach to crossing in repair, a contract with county by which it sought to relieve itself of such duty was without consideration.

**8. Railroads ⬳303(1)—Liable for neglect to repair approach to crossing notwithstanding agreement of county to repair.**

A railroad was liable for injuries occasioned by negligent repair or failure to repair approach to crossing, notwithstanding that county had agreed with railroad to keep approach in repair; contract being without consideration, under Rev. St. 1911, arts. 6485, 6494.

**9. Railroads ⬳337(2)—Blinding of driver by lights of other automobile no defense against negligence in maintaining crossing.**

That automobile driver was blinded by lights of approaching automobile was no defense against negligence of railroad in allowing its crossing to become dangerous, under Rev. St. 1911, arts. 6485, 6494.

**10. Trial ⬳350(7) — Refusal of requests of special issues relating to contributory negligence in action for defects in approach to crossing held error.**

In action against railroad for death of passenger in automobile, court *held* to have erred in refusing to give special issues requested concerning contributory negligence in failure of driver to see defect in approach to crossing.

**11. Trial ⬳352(1)—Right to submission of special issue presented by group of facts constituting defense stated.**

Where cases are submitted upon special issues, and pleadings and evidence present a group of facts, or several groups of facts, which, if proven, would constitute a complete defense of contributory negligence, defendant, where he requests it, is entitled to have such an issue submitted to jury under facts as grouped.

Appeal from District Court, Lampasas County; Lewis H. Jones, Judge.

Suit by Gladys Victoria Woods, by next friend, against the Gulf, Colorado & Santa

Fé Railway Company, in which plaintiff's guardian was substituted as plaintiff. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, and Roy L. Walker, of Lampasas, and Lee, Lomax & Wren, of Fort Worth, for appellant.

A. L. Curtis and P. H. Dougherty, both of Temple, for appellee.

BAUGH, J. Gladys Victoria Woods brought two suits against the Gulf, Colorado & Santa Fé Railway Company, in the district court of Lampasas county, for damages for the death of her father and mother which resulted from the automobile in which they were riding falling from a bridge near the railway company's right of way near Lampasas, on December 31, 1922. These suits were first filed by next friend, but later her guardian was substituted as plaintiff, the suits were consolidated, the cases submitted to a jury upon special issues. Based upon the jury's findings the court rendered judgment for plaintiff against the railway company for $8,000 in each case.

The following facts appear: A short distance out from the town of Lampasas, the old Lampasas and Gatesville public road crosses a small creek or branch commonly known as Gibson's branch. The point of crossing, prior to the building of the railway, was at what might be termed the toe of a "horseshoe bend" in the branch, over which point the county had constructed a bridge. When the railway company surveyed its line into the town of Lampasas in 1903, its right of way as surveyed intersected the public road at this point so that the line of track would pass across the county bridge. With the consent of the county commissioners, the railway company changed the channel of the branch so as to make it cross the public road just off the railway company's right of way, which was 100 feet wide, destroyed the old bridge belonging to the county, and built for the county a new bridge in lieu thereof across the new channel of the branch as changed. This change, including the new bridge and the road improvements at the railway crossing, was by order of the commissioners' court, dated June 17, 1904, accepted by Lampasas county, and said road declared a first-class public road. The old public road, as it existed prior to the building of the railroad, appears to have had little or no embankments or elevated approaches to the ends of the old bridge. The railroad track at this point, however, was laid upon a dump or embankment about 10 or 11 feet high. The new county bridge constructed by the railway company for the county was several feet higher than the old one, was 70 feet long, 16 feet wide, and so situated that the north end thereof was 122 feet distant from the point where the public road crossed the railroad track. In the intervening distance between the end of the bridge and the track, the railway company had thrown up a dump or embankment about 10 or 11 feet above the normal or natural surface of the ground on which the public road crossed the track and the bridge. The railway company's right of way crossed the public road diagonally so that the intersection of the east line of the right of way with the west line of the public road, which ran almost due north and south at this point, formed an angle of about 30 degrees. On the west side of the public road and bridge, the end of the bridge was 14 feet from the point where the west line of the road intersected the line of the right of way; down the center of the road the end of the bridge was about 26 feet from the line of the right of way; and on the east side of the public road the end of the bridge was 36 feet from the line of the right of way. The bridge had banisters or railings on both sides, which continued as fences from its north end up to and joined the cattle guards on each side of the track. This entire structure including bridge, embankments used as approaches, fences, etc., was built by the railway company at its own expense.

During the latter part of 1922 that portion of embankment or approach to this bridge over Gibson's branch between its north end and the line of the railway company's right of way got out of repair. A hole formed on the west side of the road only a few feet from the end of the bridge and a few feet from the line of the right of way. This hole was formed by a part of the embankment caving off, and appears to have been from 12 to 18 inches wide, from 12 to 18 inches deep, and about 3 feet long, extending out into the actual passageway of vehicles over the road. It appears that it had been there for some time before the time of the injury in question, and that vehicles had avoided it by turning to the east side of the road or bridge and going around it. On the night of December 31, 1922, about 10 o'clock, J. S. Woods and wife, with their daughter, Gladys, plaintiff, were driving south on this public road to Lampasas in a Ford car. The right wheels of the car ran into the hole in the road, causing it to be thrown or to run into the railing of the bridge, which gave way; the car fell about 11 feet into the bed of the branch below and both parents received injuries from which they died a few days later. Further facts pertinent to the case will be given in discussing the issues involved.

### Opinion.

Plaintiff predicated her cause of action upon the duty of the railway company under the law to keep in repair not only that portion of its right of way crossed by the public road, but also the approaches thereto, even though same extended beyond its right of way, and alleged that in the instant case the bridge and the embankment between it and

the track were approaches constituting a part of the "crossing" within the meaning of the law. The trial court took this view of the law as indicated by paragraph 6 of his charge as follows:

"You are charged that, where a railway company's line of railroad crosses a public highway in this state, it owes the duty of restoring said public highway so crossed to a reasonably safe and suitable condition, and subsequently to exercise ordinary care to keep and maintain said crossing in a reasonably safe condition, and suitable state of repair, including not only the crossing of the track, but the approaches thereto."

Also the following:

"Special Issue No. 8: Did that portion of the county road and bridge where said defects, if any, existed, constitute a part of the crossing or of the approaches thereto of said public road over defendant's railroad? Let your answer be 'Yes' or 'No.'

"In this connection you are charged that where a railway company builds or constructs its railway over and across a public highway, and in so doing changes the grade of same by constructing embankments upon which the railway track is laid, and thereafter in the restoration of said public highway to its former state of usefulness for public travel, builds, or constructs embankments or bridges which are reasonably suitable and necessary to enable persons traveling along and upon said public highway to reach and pass over defendant's track, this would constitute a crossing within the meaning of the law.

"If, therefore, you believe from the evidence, that the embankment and bridge, as originally constructed were reasonably necessary to enable persons traveling along and upon said public road to reach and pass over defendant's track, your answer to the above question should be 'Yes,' whether such embankment or bridge or other structure was within the railway company's right of way or extended beyond the limits thereof."

This charge was evidently based upon the trial court's interpretation of article 6485, Revised Statutes of 1911, which reads as follows:

"Such corporation shall have the right to construct its road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike, or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

The case was submitted to the jury on special issues, and they found that the bridge and the portion of the public road between it and the track constituted the approaches to or a part of the crossing; that the railway company was guilty of negligence which proximately caused the death of Woods and wife in permitting the hole to remain in the road; and that it was also guilty of negligence in permitting the guard rail on the bridge to become rotten and defective so that it broke off when struck by the car, and that such negligence was the proximate cause of the injuries. The chief issue in the case, properly before us, is, therefore, whether or not it was the duty of the appellant under the law to keep in repair the approach to the crossing beyond the limits of its right of way.

Article 6485 above quoted was passed in practically its present language in 1876 (Laws of Texas, vol. 8, p. 983). In 1885, the Legislature enacted what is now article 6494, Revised Statutes 1911, as follows:

"It shall be the duty of every railroad company in this state to place and keep that portion of its roadbed and right of way over or across which any public county road may run, in proper condition for the use of the traveling public; and, in case of its failure to do so for thirty days after written notice given to the section boss of the section where such work or repairs are needed by the overseer of such public road, it shall be liable to a penalty of ten dollars for each and every week such railroad company may fail or neglect to comply with the requirements of this article, recoverable in any court having jurisdiction of the amount involved in a suit in the name of the county in which the cause of action accrued."

It is the contention of the appellant, first, that under article 6485 the language "such crossing" means only that portion of a public road crossing within and upon the right of way of a railway company, and, second, that article 6494, being a subsequent enactment on the same subject, expressed and defined the legislative intent as to all public road crossings, and therefore limited the railway company's liability under article 6485 strictly to its right of way.

[1] We will first consider appellant's second contention. We cannot agree with it. Article 6485 was a portion of a general act authorizing the formation of railway corporations in Texas and defining their powers and duties. The caption to the act so states. It is general in its terms, and was clearly intended for the protection of property owners and the public as far as was reasonably possible against damage, expense, or inconvenience caused by the original construction of a railroad. It necessarily applies primarily to highways, streets, turnpikes, etc., already established and in use at the time of construction of a railroad across them, and is one of the regulations imposed upon the railway company in the exercise of its rights under section 1, art. 10, of the Texas Constitution. Article 6494, on the other hand, deals specifically with all that part of the railway right of way over which a public road crosses regardless of whether all of it is actually used physically as a crossing or not and regardless of when the public road was constructed, whether before or after the railroad was built, and specifically fixes the

duty of the railway company to keep it in a proper condition for public use, provides penalties, etc. We think it merely supplements the duty imposed on the railway company by article 6485, but does not supersede or limit the scope of that article, and that whatever duties were originally imposed by said article 6485 still exist, and such additional duties, if any, as may have been created by article 6494 are added thereto. In the passage of article 6494, the Legislature was dealing with a different subject, with a different purpose, and from an altogether different viewpoint than that governing the Legislature in the original passage of article 6485, and we think it would be a strained construction of its intent to hold that, without any reference of any kind in the latter act to the former, the Legislature intended by the passage of what is now article 6494 to define the meaning of article 6485.

[2-4] This brings us then to appellant's first contention which requires án application of article 6485 to the facts of the instant case. In Corpus Juris, vol. 17, p. 385, we find the following definition of the word "crossing":

"As a noun, applied to the intersection of a common highway and a railroad, and as used in statutes, the entire structure including the approaches, although a part of the structure may be outside the lines of the railroad's lands, or the place where the roads actually cross each other."

Other definitions include not only the crossing proper, but also the necessary embankments and approaches to the railway. See 2 Words and Phrases, First Series, p. 1763. The Supreme Court of Tennessee defines it as follows:

"The word 'crossing,' as applied to the intersection of a common highway and a railroad, and as used in the statutes relating to such crossings, means the entire structure, including the necessary approaches, though a part may be outside of the railroad's right of way." L. & N. Ry. Co. v. State, 128 Tenn. 172, 159 S. W. 601, and authorities there cited. Iola v. M. P. Ry. Co., 97 Kan. 242, 155 Pac. 45.

It was the duty of the railway company under the common law not only to restore the public road crossing to a proper condition, but to subsequently keep and maintain such crossing, including the approaches thereto, in a safe and suitable state of repair. This is a continuing duty. And such duty applies to the whole structure, although a portion of it extends beyond the limits of the right of way. 33 Cyc. 271–275. Nor do we think that article 6485, Revised Statutes, abrogates the common-law duty of the railway company in this state. Said article seems rather to declare the common-law rule than to modify or limit it. It is also true that, where a statute gives a remedy, it is only cumulative of the common-law remedy unless such statute either expressly or impliedly negatives or denies the right to the common-law remedy. 25 R. C. L. 1058; article 5492, Revised Statutes 1911; Dawson v. Miller, 20 Tex. 172, 70 Am. Dec. 380; Luder's Adm. v. State (Tex. Civ. App.) 152 S. W. 220. We think that article 6485, is only cumulative of the common law, and that article 6494 is cumulative of both the common law and article 6485. It is the duty of the court to give effect to the provisions of both articles if that can be done by any fair and reasonable construction, and we find no such conflict or inconsistency between these two articles, considered in the light of the circumstances surrounding their passage and the manifest purpose of each, as to make one any limitation upon the other.

It is clear from a consideration of article 6485, in connection with the other provisions of the law as originally passed, that it was the purpose of the Legislature to protect the county if reasonably possible against any additional burdens created by building a railroad across a public highway. The construction of the railroad was for its own profit and benefit, and as a condition imposed upon such construction it must not interfere unnecessarily with the public's use of its highway. This necessitated the restoration by the Santa Fé of the Lampasas-Gatesville road at this crossing to its former state of usefulness. The railway company recognized its legal duty to do so, and in so doing built the bridge in question with the embankment 11 feet high between the north end of that bridge and its track, which was also laid upon an embankment about 11 feet high. This same branch was bridged on this public road before the railroad was built, but no such embankment seems to have been required as an approach to it. When the Santa Fé built its road into Lampasas across this branch, it found it necessary to elevate it at this point upon a dump some 10 or 11 feet high. This dump necessarily confined the overflow waters of the stream to narrower limits and necessitated a higher bridge below it than was required before the railroad was built. This, of course, required higher approaches to such bridge than would have been necessary but for the construction of the railroad. In restoring the public road at this point so as not to impair its usefulness unnecessarily, an additional burden in upkeep and maintenance was created by the railway company, and it was just such burden, we think, that the Legislature intended that the railway company should bear when it provided in article 6485 that the railway company "shall keep such crossing in repair." We are, therefore, of the opinion that it was the duty of the railway company to keep in repair as an approach to and a part of the crossing, under the facts of this case, the embankment where the hole occurred in the public road. The jury having

found that such constituted an approach to and a part of such crossing, that the appellant was guilty of negligence in permitting such hole to remain there, and that such was the proximate cause of the death of J. S. Woods and wife, the railway company is liable in damages therefor.

[5] We are of the opinion, however, that it was not the duty of the railway company to keep the bridge in repair. When the railway company changed the channel of the branch and destroyed the old bridge to make a way for its own track and bridge, it was its duty to construct for the county another bridge in restoring the public road to its former condition. This it did, but so far as such bridge was concerned it added no new burdens upon the county because the county already had a bridge over the branch, and had no railroad been built there the burden of maintaining such bridge would have rested upon the county anyway. Such in effect is the holding in Rutland v. Ry. Co., 71 Ill. App. 442, and O. & M. Ry. Co. v. Bridgeport, 43 Ill. App. 89, and 63 Ill. App. 224, quoted from at length by appellant in its brief.

[6] It is true that the jury found that it was negligence constituting the proximate cause of the deaths for the railway to allow the guard rails of the bridge to become rotten and defective so that they broke when struck by the car and permitted it to fall into the creek below. But the car first struck the hole in the road which caused it to run into the guard rail, and the jury also found that the negligence in permitting the hole to remain in the road was the proximate cause of the injuries resulting in death. The hole in the road was the cause of the car striking the guard rail, and but for such hole we must assume that it would not have done so. It is necessarily somewhat speculative whether or not the car would have, under the circumstances, broken the guard rail had such rail not been defective. We think rather that the hole in the road was the proximate cause of the injury and that the condition of the guard rail was, in the language of the Commission of Appeals in City of Dallas v. Maxwell, 248 S. W. 667, 27 A. L. R. 927, "in legal contemplation, not a cause at all, but merely a fortuitous condition." And, even though the charge of the court was erroneous as to the duty of the railway company to keep the bridge in repair, it was liable for its failure to keep the dump in repair, and the error becomes harmless. This disposes of appellant's assignments 1 to 11.

[7] In its twelfth assignment appellant complains of the action of the trial court in striking out upon exception that portion of its answer alleging a valid contract with the commissioners' court under which the county agreed to maintain the bridge and approach after it was built by the railway company. Whatever error there was in this was harmless. As above stated, we think it

was the duty of the county to maintain the bridge and of the railway company to maintain the added embankment necessitated by the construction of its railroad. This being a duty imposed by law, the contract pleaded by appellant by which it sought to relieve itself of such duty was without consideration, and the court properly sustained the exception. 33 Cyc. 277, 278. Under our conclusion above stated the maintenance of the bridge becomes immaterial, and the error is harmless.

We find no merit in appellant's thirteenth assignment of error directed to the plaintiff's allegations that the railway company constructed the bridge and embankment in question. It was the duty of said company to, under article 6485, restore the public road, and such allegations were clearly proper.

Though addressed to the special issues submitted, assignments 14 to 19 all relate to the matters discussed under the first 11 assignments, and need not be further considered.

[8] Appellant's twentieth and twenty-first assignments relate to proffered testimony that Lampasas county had both agreed to and had in fact undertaken to keep in repair the embankment and the bridge. There was no error in excluding such testimony. If the law imposed such duty upon the railway company, it could not relieve itself from liability in such manner and it was immaterial whether the county had undertaken to keep the approach in repair or not.

Assignments 23 and 24 relate to requested issues by appellant as to the condition of the bridge. There may have been sufficient evidence to raise these issues, but under the view the court takes with reference to the bridge, the error, if any, was harmless.

[9] Assignments 25 and 26 complain of the refusal of the trial court to submit to the jury the question as to whether or not Woods' death was proximately due to his being blinded by the lights of an approaching automobile. No such issue was raised by appellant's pleadings. There was testimony raising such issue, but facing the lights from an approaching automobile is a common occurrence on a public highway in the nighttime, and necessarily interferes with the normal vision of the roadway, but such a condition is no defense against negligence on the part of appellant in allowing its crossing to become dangerous.

[10, 11] Appellant's twenty-seventh assignment complains of the refusal of the trial court to give its requested charge on contributory negligence. Appellant pleaded negligence of the deceased, first, in that the driver of the car, J. S. Woods, knew, or in the exercise of ordinary care should have known, of the hole in the road; and, second, that his car was not equipped with proper headlights, or, if so, that same were not

properly burning at the time of the injury, and that he, therefore, was guilty of contributory negligence causing his death and that of his wife.

The trial court after defining contributory negligence in general terms, submitted to the jury special issue No. 9 as follows:

"In going upon and across said embankment and bridge at the time and in the manner disclosed by the evidence, do you find from the evidence that the deceased, J. S. Woods, was guilty of contributory negligence as that term has been heretofore defined in this charge?"

To which the jury answered: "No."

The special issues requested by appellant were as follows:

"Special Issue No. 6: Did the deceased know or in the exercise of ordinary care could the deceased have known as to the existence and nature of the defects in said roadway, proximately causing the fatal injury in question?"

"Special Issue No. 6–A: Was the headlight on the automobile of deceased giving sufficient light to enable the deceased to observe and avoid the defects, if any, proximately causing said injuries?"

"In the event you have answered issue No. 6 in the affirmative, or issue No. 6–A in the negative, then you will answer the following:

"Special Issue No. 6–B: In so driving said automobile under such circumstances or in causing or permitting the same to be driven, as that the wheels thereof came in contact with said defects, if any, and thereafter said automobile was driven or fell off of the floor of said bridge into the bed of the creek below, was the deceased guilty of contributory negligence as that term has been heretofore defined?"

The first of these special issues requested was, we think, rather general in its nature, and we doubt if the pleadings on which it was based sufficiently allege specific charges of contributory negligence to authorize its submission. The trial court may have found also that the proof on this issue was too meager to require its submission. But clearly requested charges 6–A and 6–B should have been given. They specifically submit contributory negligence of the deceased as pleaded by appellant. The evidence on such issue was conflicting, it is true, but was clearly sufficient to raise the issue. The issue of contributory negligence as submitted by the trial court was nothing more than a general charge. The courts have repeatedly held that where cases are submitted upon special issues, and the pleadings and the evidence present a group of facts, or several groups of facts which if proven would constitute a complete defense of contributory negligence to plaintiff's action, the defendant, where he requests it, is entitled to have such an issue submitted to the jury under the facts as grouped. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Ft. W. & D. C. Ry. Co. v. Miller, 112 Tex. 355, 247 S.

W. 503; Strawn Coal Co. v. Trojan (Tex. Civ. App.) 195 S. W. 258; Southern Traction Co. v. Gee (Tex. Civ. App.) 198 S. W. 994.

It was error for the trial court to refuse to give the special instructions requested. It is just as essential that the defenses pleaded, if there be competent evidence to support them, be submitted in special issues covering the defendant's theory of the case, unless waived by the defendant, as that the plaintiff's theory of the case be so submitted.

For the error indicated the judgment of the trial court must be reversed and the case remanded for another trial.

Reversed and remanded.