GALVESTON, H. & S. A. RY. CO. et al. v.
RODRIGUEZ et ux.   (No. 1842.)*

(Court of Civil Appeals of Texas.   El Paso.
Feb. 4, 1926.   Rehearing Denied
Feb. 18, 1926.)

1. Railroads ⬦⟶303(1).

"Crossing" means entire structure, including necessary approaches, though part may be outside railroad's right of way.

[Ed. Note.—For other definitions, see Words, and Phrases, First and Second Series, Crossing.]

2. Railroads ⬦⟶95(1)—Railroad must restore highway to reasonably safe condition after constructing crossing (Rev. St. 1911, arts., 6485, 6494).

Railroad company has duty, under Rev. St. 1911, arts 6485, 6494, of restoring public highway to reasonably safe and suitable condition, so as not to unnecessarily impair its usefulness, after constructing crossing.

3. Railroads ⬦⟶303(1)—Railroad must exercise ordinary care to keep crossing in reasonably safe condition (Rev. St. 1911, arts. 6485, 6494).

Under Rev. St. 1911, arts. 6485, 6494, railroad, after constructing crossing, must subsequently exercise ordinary care to keep and maintain it in .reasonably safe condition and suitable state of repair.

4. Railroads ⬦⟶303(1).

Railroad's failure to keep crossing in proper condition for use of traveling public is negligence per se.

5. Railroads ⬦⟶345(4)—Traveler held entitled to recover for injury from defective crossing approach before reaching railroad's right of way, though alleging accident occurred on right of way.

Where plaintiff alleged that she was injured when automobile overturned at crossing on railroad's right of way, jury's finding that accident occurred on approach before reaching right of way would not affect railroad's liability, since its duty to keep crossing in safe condition extended to such approaches.

6. Trial ⬦⟶351(5).

To avoid confusion in trial court's findings, same issue should be submitted but once.

7. Appeal and error ⬦⟶1004(1)—Jury's finding of damages for bodily pain and disturbed, earning capacity will not be disturbed, in absence of passion, prejudice or sinister motive, unless so excessive as to shock moral sense.

Appellate court will not set aside jury's finding of damage for bodily pain and·disturbed earning capacity, in absence of showing of passion, prejudice, or sinister motive, unless it is so excessive as to shock the moral sense.

Appeal from District Court, Brewster County;  C. R. Sutton, Judge.

Action by Manuel Rodriguez and another against the Galveston, Harrisburg & San An-
tonio Railway Company and another.  From a judgment for plaintiffs, defendants appeal. Affirmed.

W. Van Sickle, of Alpine, and W. B. Teagarden, of San Antonio, for appellants.

Mead & Metcalfe, of Marfa, for appellees.

WALTHALL, J.  This suit was brought by Manuel Rodriguez and wife, Manuela Rodriguez, appellees herein, in the district court of Brewster county, against the Galveston, Harrisburg & San Antonio Railway Company, and the Texas & Pacific Railway Company, appellants herein, for $10,000 damages, alleged to have been sustained by the wife, Manuela Rodriguez, on account of the alleged negligence of said railroad company, by the overturning of an automobile at the intersection of the railroad with a public highway, in which she was riding as a passenger.

Appellees allege, in substance,· that from Sierra Blanca, in Hudspeth county, the railroad line of appellants runs in a western direction to El Paso, and that the public highway, a part of the "Old Spanish Trail," on which appellees were traveling in their automobile, crosses said railroad tracks at a point some 20 miles west from Sierra Blanca; that appellant's railroad right of way at said crossing is about 100 feet wide, and appellants constructed said crossing and undertook to maintain said crossing, as it was their duty to do, inside of the lines of their right of way; that at said crossing the railroad track is constructed on a dump several feet higher than the lands adjoining, and higher than said highway, which is nearly on a level with the adjacent lands; that just west of said railroad crossing with said highway the said highway is on the south side of the railroad tracks, and from said crossing west runs for several miles adjacent to the railroad right of way, and at said crossing the highway makes a sharp curve north crossing the right of way and railroad tracks at nearly a right angle; that said public highway near said crossing, as maintained by the public authorities, is about 60 feet wide, and is maintained about that width on each side of said crossing; that appellants in constructing said crossing, built a dump or embankment starting from the outer edge of the railroad right of way on the south side, and gradually increased its height until it reached the level of the railroad track, which dump was constructed of sand and dirt scraped from the land adjoining; that in constructing its roadbed on its right of way in the vicinity of said crossing appellants had made and maintained barrow pits on each side of its roadbed, which barrow pits, with the raised roadbed, required the construction of substantial dumps to make a safe and convenient crossing for the highway at that point; that appellants failed to properly construct and maintain said crossing so

as to be safe and convenient for the use of the traveling public, in that said dump and approach to the railroad track on the south side was constructed and maintained of soft earth, without permanent or substantial surface, and on said dump and along the curve, where the public road turns onto the right of way, of a width of from 15 to 20 feet; that the outer edges of said dump, as constructed, were sloping, which, with the soft material used in making said dump, made it difficult and dangerous for automobiles to go over said crossing from the west with no retaining wall or guard rail along the south and east side of said dump and its approach to said crossing. It is alleged that about the 3d of February, 1925, appellee Manuela Rodriguez, with other persons, as a passenger, was returning from El Paso to her home at Alpine, and was traveling along said public road in an automobile which belonged to and was being run by one Dario Cobos; that a little after dark, when said automobile in which they were traveling reached said crossing, and said Cobos attempted to drive across said railroad tracks following the regular traveled roadway, and operating his automobile in a careful and cautious manner, same being equipped with proper headlights and steering machinery, and running at a slow rate of speed, said automobile struck the loose dirt on the dump on the inside of the right of way, and slid off said dump, turning over, and pinning the occupants of said automobile, including appellee Manuela Rodriguez, underneath it, thereby causing the injuries complained of.

Appellees assign the following as acts of negligence on the part of appellants proximately causing the injuries complained of: First, failure to construct said dump and approach to the railroad track out of substantial material and with a sufficiently hard surface to prevent said dump from crumbling and easily giving way when crossed by motor vehicles, at the place where the said highway intersects or crosses said railroad tracks; second, failure to construct and maintain said dump and approach to said crossing wide enough at the top thereof to safely permit motor vehicles to turn on the right of way and cross the railroad tracks without danger of running off of said dump; third, failure to construct and maintain a retaining wall or guard rail of some kind along the outer edge of said dump and the approach thereof on the south side of said track and east side of said dump to prevent motor vehicles sliding off said dump when attempting to make said crossing from the west.

Appellants pleaded general demurrer, general denial; alleged that the accident causing said injuries was due entirely to the driver of the automobile, or at least to his contributory negligence in specific particulars as set out as follows: That appellee Manuela Rodriguez and the driver of the automobile were joint enterprisers in the venture on which they were bound, and the negligence of the driver should be imputed to her, and that she was also guilty of negligence which either caused or contributed to bringing about the accident. The particulars, briefly stated, are to the effect, due to the manner in which the driver operated the automobile, his failure to observe and avoid defects, if any, in the crossing, driving at a high rate of speed, poor and inferior headlights, defective brakes and steering geer, failure to make a proper curvature with the road, he ran too near the edge without any necessity of doing so.

The case was tried before the court with the assistance of a jury, and submitted on special issues, resulting in a judgment for appellees and against both appellants for $10,000.

Appellants moved for judgment on the findings of the jury and of questions of law, which motion the court denied. The appellants filed a motion for a new trial, which the court overruled, and appellants gave notice of, and have perfected, an appeal to this court.

### Opinion.

Omitting, at this time, the explanations and definitions of legal terms given by the court in submitting to the jury the special issues, and without stating the verbiage of the questions submitted, except where deemed necessary, the findings of the jury on the issues submitted are substantially as follows:

(1) The railroad companies did not construct the dump and approach to the railroad track at the place of the accident out of substantial material and with a sufficiently hard surface to prevent said dump from crumbling and easily giving way when crossed by motor vehicles.

(2) Such failure on the part of the defendants was negligence.

(3) Such negligence was the proximate cause of the accident.

(4) The railroad companies did not construct and maintain a dump and approach to the crossing at the place of the accident wide enough at the top thereof to safely permit motor vehicles to turn on said right of way and cross the track without danger of running off the dump.

(5) Such failure of the railroad companies was negligence.

(6) Such negligence was the proximate cause of the accident.

(7) It was negligence for the railroad companies to fail to construct and maintain a retaining wall or guard rails of some kind along the edge of the dump and approach thereof of the railroad track on the south and east side thereof, at the crossing in question, so as to prevent motor vehicles from running off or sliding off of said dump when attempting to cross said railroad track from the west.

(8) Such negligence was the proximate cause of the accident.

(9) The plaintiff Manuela Rodriguez exercised ordinary care in intrusting herself to ride in the automobile with Dario Cobos.

(10) Manuela Rodriguez used ordinary care and judgment for her own safety when the automobile was approaching the crossing in question.

(11) (Conditional, and not answered.)

(12) Dario Cobos, the driver of said automobile, exercised ordinary care for the safety of the persons riding in said automobile in the manner in which he approached said crossing and attempted to cross said railroad.

(13) Said automobile was not being operated at an unlawful or dangerous rate of speed at the time it approached the crossing in question.

(14) "We find from the evidence that $10,000, if paid now in cash, would fairly and reasonably compensate for the injuries received by Manuela Rodriguez by reason of the accident in question."

At the request of appellants the court submitted special questions 1 and 2, to which the jury answered:

"(1) The crossing of the road within the lines of defendants' right of way, on the south side of the tracks, was in reasonably good condition for the traveling public, so that persons, by the exercise of ordinary care for their own protection, could have operated a car with lights in reasonably good condition over it safely at night.

"(2) The automobile went over the edge of the road and started down the side of the road before it reached defendants' right of way."

Before we begin the consideration of the issues presented, some well-established and undisputed facts disclosed by the evidence, but not specifically submitted to or found by the jury, but evidently considered by the court in entering the judgment, might be stated.

The highway involved in this controversy is a public road, as shown by the evidence, and is a part of the Old Spanish Trail, and connects with the more recent Bankhead Highway running from east to west through the state at Van Horn, a point east of the crossing in controversy. The Old Spanish Trail is one of the oldest and best known state highways running east and west through the state. Its use as a highway antedates the construction of the railroad. The railroad was constructed in the vicinity of the crossing with said highway in 1881.

The evidence shows that the identical crossing in controversy of the highway with the railroad was made subsequent to the construction of the railroad, and made in 1914, and that there is a continuous stream of travel over that road and crossing by automobiles and other methods of transportation both day and night. The undisputed evidence further shows that many automobiles in making that crossing have gone over the embankment practically at the very same point as did the one in this controversy.

Appellants contend that, under appellees' pleading, and as a matter of law, they were in no sense liable for conditions existing at the crossing outside of their right of way, and, therefore, were entitled to judgment on the facts and the two findings of the jury on issues submitted by them, notwithstanding other findings of the jury, and, based practically on the above, appellants complain of the refusal of the court to enter judgment for them, and complain of several charges of the trial court in defining to the jury the word "crossing" as applied to the intersection of a public highway and a railroad, as used in the statutes relating to crossings, and in instructing the jury as to the duty of a railroad company in restoring a highway so crossed to a reasonably safe and suitable condition so as not to unnecessarily impair its usefulness, and subsequently to exercise ordinary care to keep and maintain the crossing and approaches extending beyond the railroad right of way in a reasonably safe condition.

[1-3] The court instructed the jury that the word "crossing," as applied to the intersection of a public highway and a railroad, and as used in our statutes relating to such crossings, means the entire structure, including the necessary approaches, though a part may be outside of the railroads' right of way, and that the railway company owes the duty of restoring the public highway so crossed to a reasonably safe and suitable condition so as not to unnecessarily impair its usefulness, and subsequently to exercise ordinary care to keep and maintain said crossing in a reasonably safe condition and suitable state of repair, including the crossing of the track and the approaches thereto, whether the approaches extend beyond the right of way of the railway or not, and the failure to do so would be negligence.

The appellants duly submitted suitable special charges, which the court refused, confining the duty of appellants as to the crossing to conditions within the lines of the right of way, and not to consider any defects or conditions of the crossing not within the south line of their right of way. In this connection, as the identical crossing was made subsequent to the construction of the railroad, appellants complain of the refusal of the court to give a special charge submitted instructing the jury to the effect that it was not the duty of appellants in the first place to construct the roadway approach to the crossing south of the line of their right of way, and for that reason they were not responsible for the character of the material out of which the roadway approach was originally constructed, and by its special charge undertook to confine its duty, both in the

original construction of the roadway and its maintenance, to within the lines of the right of way.

Article 6485, R. S. 1911, provides that a railroad corporation shall have "the right to construct its road across, along, or upon any * * * highway * * * which the route of said railway shall intersect or touch; but such corporation shall restore the * * * highway * * * thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair." Article 6494, R. S. 1911, reads:

"It shall be the duty of every railroad company in this state to place and keep that portion of its roadbed and right of way over or across which any public county road may run, in proper condition for the use of the traveling public,"

—and provides a penalty, after notice, for failure to comply therewith.

The construction placed upon the last above-quoted article of our statute, by our Supreme Court in G., C. & S. F. Ry. Co. v. Milam County, 38 S. W. 747, 90 Tex. 355, rules against the contention of appellants expressed in the above special charge directly holding that said article necessarily imposed upon the railroad company the duty of constructing the crossing in the first instance, as well as in those cases where the county road is laid out subsequently to the building of the railroad, as in cases where the county road existed before the railroad was constructed. There seems to be no difference (and several times so held) as to the duty of the railroad to the public under the two articles of the statute.

The question is presented: Was it the duty of appellants, under the facts in the case, to construct and maintain the roadway approach to the crossing south of the line of their right of way? If it was not appellants' duty to construct and maintain the approach to their right of way, it would not be their duty to maintain such approach, nor would they be responsible for the material out of which such approach was constructed. And for a like reason it would not be appellants' duty to construct and maintain a retaining wall or guard rail on said approach south of the right of way.

[4] The above article of the statute, as above construed by the Supreme Court, makes it the duty of a railroad company, after exercising its right as to the public highway as therein provided, whether it constructs its road before the highway is laid out across its tracks, or whether the highway is laid out across its right of way and tracks after the railroad is constructed, to restore, place, and keep the highway in such state as not to impair its usefulness in proper condition for the use of the traveling public, and such duty is made obligatory by the statute (Railway v. Warner, 32 S. W. 868, 88 Tex. 642), and a failure to perform such duty is negligence per se (Railway v. Bowles, 32 S. W. 880, 88 Tex. 634).

[5] At the point of intersection of the highway and the railroad tracks, the railroad tracks were on an embankment several feet above the surrounding land on the south side upon which the highway approaches the railroad right of way, and turned sharply upon the right of way to make the crossing. The evidence shows that a dump or embankment used as an approach to the railroad tracks on top of the embankment was thrown up, extending from where the highway turned on the level with the surrounding ground to make the railroad crossing, to the level with the railroad tracks. The dump or embankment, and what is referred to as the approach to the crossing, extended south of the south line of the railroad right of way, and into and made a part of the highway on its elbow turn to make the crossing.

We think it would not be a departure from law to law, and for that reason alone deny judgment as insisted by appellants, where appellees allege the accident causing the injuries as occurring within appellants' right of way, and where, under the evidence on a controverted issue of fact as to the exact place where the accident did occur, the jury found the accident happened just outside the right of way, but on the approach to the same crossing, if appellees are otherwise entitled to recover. The negligence, if any, would be the same, the liability the same, and growing out of a failure to perform the same duty. If it was appellants' duty to construct and maintain the approach to the crossing, there would be no departure or change either in the substance of action or defense; in other words, the appellants would not be forced to trail the appellees from one issue to another, nor be placed at the disadvantage of being compelled to meet unexpectedly a new case after preparing against a different one. The appellants could plead the record with certainty as a former adjudication.

In Gulf, C. & S. F. Ry. Co. v. Woods, 262 S. W. 229, without making an extended statement of the facts, Mr. Justice Baugh, for the Austin Court of Civil Appeals, said that the chief issue in the case was whether or not it was the duty under the law of the appellant railroad company to keep in repair the approach to the railroad crossing beyond the limits of the right of way. We refer to the case for a statement of the facts. In that case, as said in the opinion, Mrs. Woods, the plaintiff, predicated her cause of action upon the duty of the railway company, under the law, to keep in repair, not only that portion of its right of way crossed by the public road, but also the approaches thereto, even though same extended beyond its right of way. While the case was re-

versed on the failure of the trial court to submit some defensive matters pleaded, the case very clearly discussed both articles of our statute above referred to, and is directly in point on the question presented here. It is there held that article 6494 merely supplements article 6485, and specifically deals with all that part of the railway right of way over which a public road crosses, regardless of when the public road was constructed, whether before or after the railroad was built, and specifically fixes the duty of the railroad company to place and keep it in a proper condition for public use. In discussing article 6485 it is held that the article does not abrogate, but rather declares, and is cumulative of, the common-law rule than to modify or limit it, and quotes with approval from 17 Corpus Juris, p. 385, and from Railway. v. State (Sup. Court of Tenn.) 159 S. W. 601, 128 Tenn. 172, and authorities cited; Iola v. Railway, 155 P. 45, 97 Kan. 242; 33 Cyc. 271–275; each holding that the word "crossing," as applied to the intersection of a common highway and a railroad, and used in the statutes relating to such crossings, means the entire structure, including the necessary approaches, though a part may be outside of the railroad's right of way. Without a further review of the above case, we follow the holding there stated as to the duty of a railroad company at places where its line intersects a public highway.

Reverting to the findings of the jury on special issue No. 2, submitted by appellants, and other issues submitted by the court in his general charge, as to the condition of the dump or embankment at the place of the accident, the jury found that the automobile went over the edge of the road and started down the side of the road before it reached defendants' right of way, and that the railroad companies did not construct the dump at the place of the accident out of substantial material and with a sufficiently hard surface to prevent said dump from crumbling and easily giving way when crossed by motor vehicles, and that such failure on the part of the companies was negligence, and the proximate cause of the accident; that the dump and approach to the crossing at the place of the accident was not wide enough at the top to safely permit motor vehicles to turn on the right of way and cross the tracks without danger of running off the dump, which also was negligence and the proximate cause of the accident, and that it was also negligence and the proximate cause of the accident in failing to construct and maintain a retaining wall or guard rail along the edge of the dump and approach on the south side of the tracks on the east side of the dump and approach at the crossing. If the dump on the approach to the crossing south of the railway right of way, at the place of the accident, is in the condition found by the jury as above, and that a retaining wall or guard rail should have been placed on the east side of the dump south of the tracks, it is easy to account for such condition and failure to construct a retaining wall or guard rail, as the railway officers and employees testify that they looked after the condition of the dump and approach to the tracks within the railroad right of way only, being fully under the impression that the duty of the railroad was limited to its right of way. So far as the issues here are involved, it might be conceded that the crossing of the highway within the lines of appellant's right of way was in reasonably good condition as found by the jury, as the condition of the dump at places other than the place of the accident is immaterial, except, possibly, as to the duty to have placed a retaining wall or guard rail on the east side of the dump, as that finding of the jury is not confined to the place of the accident, but probably applies to the east side of the dump south of the tracks.

[6] Appellants submitted several special charges, which were refused, and of which refusal appellants complain. Without reviewing them severally, we think the refusal of the court to give the special charges presents no error. The issues tendered by the pleadings were sufficiently submitted. To avoid confusion in the findings, it is thought to be the best practice not to submit the same issue but once.

Complaint is made to the instruction given on the measure of damages, in connection with question No. 14, and recites a quotation, supposedly from the charge in the proposition, which the proposition says reads as follows, etc., giving the pages of the transcript, but an inspection of the entire transcript discloses no such charge as is recited in the brief. But, in the event the part of the charge recited in the brief was actually given, as seems to be the case from the discussion of the charge by appellees, still from a careful examination of the evidence such a charge would not be error, under Posener v. Long, 156 S. W. 593, by this court, writ of error refused, and Railway v. Bidd (Tex. Civ. App.) 172 S. W. 178.

[7] Appellants insist that the verdict is excessive. We need not recite the evidence as to the injuries sustained. It has been well said in this character of case that the damages sustained are more or less speculative, and cannot be mathematically calculated. The uncertainty of correctly estimating what is a fair money compensation for pain of body, and disturbed, and probably lifelong destroyed, earning capacity, strongly suggests that we do not substitute our finding for that of the jury on the issue of the damages. There is nothing in the record to indicate passion, prejudice, or sinister motive. We cannot say that the amount found by the jury is so excessive as to shock the moral sense, or justify this court in setting aside the amount found by the jury and the trial

court in approving same, and substituting therefor an amount found by us.

After a careful review of the entire record, with the aid of able and helpful briefs on the issues presented, we have found no reversible error.

The case is affirmed.