### HAYS et al. v. TEXARKANA & FT. SMITH RY. CO. et al.

### No. 4705.

Court of Civil Appeals of Texas. Texarkana.

Sept. 14, 1935.

Rehearing Denied Sept. 26, 1935.

Crumpton & Crumpton, of Texarkana, for appellants.

King, Mahaffey, Wheeler & Bryson, of Texarkana, and Ramey, Calhoun & Marsh, of Tyler, for appellees.

JOHNSON, Chief Justice.

Appellant, Roland Hays, for himself and as assignee of several persons named in his petition, sued appellees, Texarkana & Fort Smith Railway Company, Texas & Pacific Railway Company, and St. Louis Southwestern Railway Company of Texas, to recover damages for loss of their household effects and other personal property destroyed by fire on November 30, 1932.

Plaintiff's petition predicates liability (1) upon alleged negligence of defendants in failing to discharge their statutory duty to keep repaired a certain viaduct which extends over and across their right of way and tracks and takes the place of portions of Oak and Elm streets in the city of Texarkana, Tex.; and (2) upon alleged negligence of defendants in blocking, or failing to keep open and in proper condition for use of the traveling public, said portions of Oak and Elm streets. The defendants answered by general demurrer and general denial.

Trial was had to a jury. At the conclusion of the testimony for both sides, and upon motion of defendants, the trial court directed a verdict for defendants. Plaintiff's motion for new trial was overruled, from which he has perfected his appeal.

Appellant presents as error the action of the trial court in overruling his motion for new trial, for reason first assigned therefor in the motion reading: "A new trial should be granted in this cause, because the court committed error in giving the defendants' peremptory instruction to find for the defendants. The plaintiff's cause of action was based upon the delay of the railroad companies in repairing the viaduct crossing their railroad tracks and known as the Texas Viaduct, in which the same was a public street within the City of Texarkana, Texas, erected by the railroad companies in consideration of the closing of Elm and Oak Streets for the purpose of their use as railroad tracks."

The material facts are not controverted.

Appellant introduced evidence showing that he and his assignors resided in that part of the city of Texarkana, Tex., known as Taylor quarters, located at and near the south end of the viaduct crossing appellees' right of way and tracks which run at this point in the general direction of east and west; that the viaduct was constructed by appellees in 1912 by agreement with the city and in consideration for which the city by ordinance closed and abolished the portions of Oak and Elm streets which crossed appellees' rights of way and tracks; that in June, 1932, a fire destroyed a portion of the viaduct, rendering it impassable as a public thoroughfare; that the city's fire stations were located north of appellees' right of way; that the viaduct was the direct and only practical route over which the fire engines could pass in reaching that immediate section of the city where appellant and his assignors resided; that, though notified of this condition shortly after the fire which destroyed a portion of the viaduct in June, 1932, appellees had not repaired the burned portions of the viaduct when, on November 30, 1932, some one started a grass fire in the community where appellant and his assignors resided; which fire spread to the dwellings in which appellants and his assignors lived, and burned their household effects and other personal property, to their damage in the sum of $1,271.75; that the city of Texarkana, Tex., maintains an efficient fire department; that, had it not been for the impassable condition of the viaduct, the fire department would have reached the premises in time to have extinguished the fire before it burned the property of appellant and his assignors.

Appellees introduced evidence uncontradicted showing that the portions of the viaduct injured by the fire in June, 1932, and so remaining out of repair when the fire occurred which destroyed the property of appellant and his assignors in November, 1932, was at a point not over or across appellees' right of way or property; that the portion of the viaduct so out of repair was outside of, and at a point 143 feet south of appellees' right of way and property line.

The first issue of law presented, and which we think is decisive of the case, is that concerning the duty imposed by our statutes upon railroad companies to place and keep in proper condition for use of the traveling public the crossings at the intersection of their railroads and public highways, particularly with regard to whether or not the duty of maintenance as fixed by the statutes extends to that part of the highway outside of the railroad company's right of way, and constituting that part of the crossing termed the approaches. Specifically stated, the issue is: Were the appellees required by the statutes to repair that portion of the viaduct shown to have been burned and out of repair, at a point outside of appellees' right of way and property line?

In affirming the issue, appellant cites and relies upon R.S. 1925, articles 6320, 6555, 6556, and the case of Wichita Valley Ry. Co. v. Meyers (Tex.Civ.App.) 248 S.W. 444. In contending that they owed no duty to repair or maintain that portion of the viaduct extending outside of their right of way, appellees rely upon R.S. 1925, articles 6320, 6327, 6555, 6556 and the cases of Galveston, H. & S. A. Ry. Co. v. Rodriguez (Tex.Com.App.) 288 S.W. 151, and Gulf, C. & S. F. Ry. Co. v. Woods (Tex. Com.App.) 290 S.W. 729. The articles of the Revised Statutes referred to by appellant and appellees provide:

Article 6320: "Such corporation shall have the right to construct its road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal when the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike, or canal thus intersected or touched, to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

Article 6327: "Every railroad company in this State shall place and keep that portion of its roadbed and right of way, over or across which any public county road may run, in proper condition for the use of the traveling public."

Article 6555: "All cities acting under special charters granted by the legislature are hereby granted all necessary rights and powers to carry out and comply with existing contracts or to hereafter make contracts with railway companies owning or operating tracks in such cities, to erect and complete by such railway companies, all necessary viaducts, the construction and completion of which shall be at the expense of. such railway companies, according to plans and specifications agreed upon between such companies and such cities."

Article 6556: "All such cities are here-by given authority to abolish and close such portions of any highway, street or alley crossed by railroad tracks, as such cities have or may agree to close and abolish, in consideration of procuring the erection and completion of any viaduct by any railway company or companies."

█ The above statutes, in declaring the duties they impose upon railroad companies to construct and maintain, in proper condition for use of the traveling public, crossings at intersections of their railroads and a public road or street, do not confine such duty of maintenance to crossings of a particular type in form of construction; but the language of the statutes is broad enough, and clearly evidences the legislative intent, to apply the duty of maintenance to all such crossings, whether constructed underneath, on a level with, or above the railroad tracks. That is to say, the term "crossing" as used in the statute includes a viaduct as well as a grade crossing or underpass, and the railroad company's duty of maintenance as declared by the statutes extends to all such crossings.

On the other hand, such statutes are construed as not extending the duty of maintenance beyond the railroad company's property line, but limits it to the railroad company's right of way, over and across which the public road or street may run. Galveston, H. & S. A. Ry. Co. v. Rodriguez (Tex.Com.App.) 288 S.W. 151, 152; Gulf, C. & S. F. Ry. Co. v. Woods (Tex.Com.App.) 290 S.W. 729, 730. In the Rodriguez Case, plaintiffs recovered judgment for personal injuries sustained in an automobile accident, caused by the automobile sliding off that part of the crossing termed the approach, constructed by the railroad company, leading up to but outside of its right of way. On writ of error to the Supreme Court, the judgment of the trial court and Court of Civil Appeals (281 S.W. 259) was reversed and judgment rendered for the railroad company. In the opinion of the Commission of Appeals, written by Judge Speer, it is said:

"The case is a crossing case, and the defendants in error have recovered upon the theory that the statutes require the railway company to construct and maintain proper approaches to its crossing with the public highway, whether such approaches extend beyond the right of way of the railway company or not. * * *

"The substance of the requirement in each case [articles 6320 and 6327, R.S. 1925] is identical; that is, the duty rests upon the railroad company at any public crossing, first, to construct the crossing, and, second, to maintain it in proper condition for the use of the traveling public. * * * This necessarily includes approaches, if by that term is meant that portion of the highway immediately adjacent to the rails of the railroad, but otherwise if by the expression is meant that part of the highway outside the right of way immediately adjacent thereto.

"The beneficent purpose of the statute enacted in the interest of the traveling public is to restore, in a case of a highway crossed by the railroad, and to construct in all others, a crossing in such way as to leave the highway in proper condition for the use of the traveling public. The very purpose of the law and the language in which it is couched evidences an intention that the activities of the railroad company should be confined within the lines of its right of way. * * *

"While the primary purpose of article 6494 [now article 6327] was to make clear that the duties of railroad companies imposed by article 6485 [now article 6320] extended to highways established after the railroad was constructed, as well as to those established before, yet it also evidences a legislative interpretation of those duties as being confined to construction and maintenance within the company's right of way. * * *

"It being undisputed that the acts relied upon as negligence in this case concerned the construction and maintenance of the public highway at a point outside the railroad company's right of way, the trial court should have instructed a verdict for the defendant."

In the Woods Case, supra, plaintiff recovered judgment for damages for the death of her father and mother, resulting from an automobile accident, occurring at the intersection of the public road and railroad, and caused by a cave in the embankment constituting a part of the crossing. This particular part of the crossing as well as the bridge near the end of which the accident occurred was outside of the railroad right of way, and the embankment, as well as the bridge, had been constructed by the railroad company in accordance with an agreement between it and the county authorities. The case pre-

sented the same issue of law that was before the court in the Rodriguez Case, and as presented in the case before us, namely, whether or not the statutes require railroad companies to maintain that part of the crossing outside of its right of way. The Supreme Court, as recommended by the Commission of Appeals, reversed the judgment of the trial court and the Court of Civil Appeals, 283 S.W. 859, and rendered judgment for the railroad company, on the ground that the railroad company's duty of maintenance did not apply to that part of the crossing extending beyond the limits of the right of way. In the opinion, written by Judge Short, the word, "crossing" as used in the statute is given its ordinary signification; and judicial application of the word is made in the following language: "When a railway is laid across the public highway, the word 'crossing' as used in the statutes heretofore quoted means that part of the public highway from the point where it touches the property line of the railway company on one side until it passes over and beyond the railway company's property line on the opposite side of the track."

The case of Wichita Valley Ry. Co. v. Meyers (Tex.Civ.App.) 248 S.W. 444, 445, does not appear to be in point. The suit was by Mr. Meyers to recover damages "for injuries alleged to have been sustained by him, and also for injuries to the horse which he was riding, by the horse falling with him on the railroad track of the defendant at a street crossing in the city of Abilene, Tex." The defect there complained of being in that part of the crossing immediately over the roadbed and tracks, the question of maintenance outside the railroad company's right of way was not raised by the facts, and what was said in the opinion would be regarded as referable to the facts under consideration by the court.

It being uncontroverted that the Texas viaduct is a public street in the city of Texarkana, Tex., and that the portion of the viaduct termed the approach, complained of as out of repair, rested on property over which appellees had no right of control, at a point outside of and beyond their right of way and property line, therefore no duty rested upon appellees to make the repairs, and negligence could not be predicated upon their failure to do so.

It is not thought that negligence can be charged against appellees for failure to keep open and in condition for use of the traveling public the portions of Oak and Elm streets, as complained of by appellant. Such portions of said streets were shown to have been duly closed by ordinance of the city of Texarkana, passed November 19, 1912, in consideration of the erection and completion of the viaduct by appellees. Such proceedings were in accordance with the statute, articles 6555 and 6556.

The judgment of the trial court will be affirmed.