## WELLS et al. v. FORD.

### No. 3307.

Court of Civil Appeals of Texas.
Beaumont.

June 13, 1938.

Rehearing Denied June 22, 1938.

Sewell, Taylor, Morris & Garwood, of Houston, and Howell & Howell, of Beaumont, for appellants.

Orgain, Carroll & Bell, Chas. S. Pipkin, and David C. Marcus, all of Beaumont, for appellee.

WALKER, Chief Justice.

On, the 19th day of March, 1932, in the course of his employment with Yount-Lee Oil Company, appellee, W. G. Ford, was injured in a collision between an automobile he was driving and a truck, driven by Milton Green. This was a suit in the lower court, filed in the district court of Jefferson County on the 19th day of March, 1934, by appellee against appellants, Milton Green, W. C. Wells, and appellee, South Texas Lumber Company, for damages suffered by him in the collision. Under provisions of our Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., the Texas Employers' Insurance Association, the compensation insurance carrier of appellee's employer, paid him as compensation the sum of $584.90, representing in part the following items covered by the Compensation Act, summary taken from appellee's brief:

"To Dr. I. K. Moorehouse for medical treatment of Twenty ($20.00) Dollars; to Dr. Rogers Pierson, medical treatment, Sixty ($60.00) Dollars; Hotel Dieu, for hospital services, One Hundred, Thirty-Four and 50/100 ($134.50) Dollars; to Carrie Sodien, for nursing services, Eighty-Eight ($88.00) Dollars; to Beaumont General Hospital, for hospital services, Eleven ($11.00) Dollars; to Thames Drug Company, for drugs and medicines, Four and 32/100 ($4.32) Dollars; to Pipkin & Brulin Company, for ambulance service, Five ($5.00) Dollars; to Dr. J. B. Swonger, for medical services, Thirty-Six ($36.00) Dollars; to Clesta Jacobson, for nursing service, One Hundred, Twenty-Two and 50/100 ($122.50) Dollars; to Dr. L. H. Ledbetter, for X-ray pictures, Fifteen ($15.00) Dollars; or a total for medical, hospital, nurses, X-ray and ambulance service of Four Hundred, Ninety-Six and 32/100 ($496.32) Dollars."

On the 26th day of July, 1937, on the verdict of the jury finding the basic facts plead by appellee as grounds of recovery, judgment was entered in his favor against appellants, Wells and Green, jointly and severally, for the sum of $5,415.10, and in favor of intervenor, the Texas Employers' Insurance Association, for the sum of $584.90, and that South Texas Lumber Company go hence without day. From the judgment, appellants, Wells and Green, have duly prosecuted their appeal to this court.

Issue No. 5 of the court's charge was as follows:

"Do you find from a preponderance of the evidence that the said Milton Green, prior to and at the time he undertook to make a left-hand turn on said Beaumont-Houston highway near said Magnolia filling station, failed to keep a proper lookout to ascertain

if anyone was approaching and was in the act of attempting to pass said dump truck to its left?"

To this issue appellants reserved the following exception:

"Because same is multifarious and duplicitous in that it inquires of the jury, first, as to whether or not said Green failed to keep a proper lookout to ascertain if anyone was approaching, and also inquires as to whether or not he failed to keep a proper lookout for anyone in the act of attempting to pass the dump truck."

We quote from appellants' brief:

"The manner in which said issue was submitted to the jury was clearly multifarious and duplicitous in that said issue, as a matter of fact, submitted to the jury for its determination four separate and distinct issues, as follows:

(1) "Did Milton Green prior to the time he undertook to make a left-hand turn on said Beaumont-Houston highway near said Magnolia filling station, fail to keep a proper lookout to ascertain if anyone was approaching?

(2) "Did Milton Green prior to the time he undertook to make a left-hand turn on said Beaumont-Houston highway near said Magnolia filling station, fail to keep a proper lookout to ascertain if anyone was attempting to pass said dump truck to its left?

(3) "Did Milton Green at the time he undertook to make the left-hand turn on said Beaumont-Houston highway near said Magnolia filling station, fail to keep a proper lookout to ascertain if anyone was approaching?

(4) "Did Milton Green at the time he undertook to make a left-hand turn on said Beaumont-Houston highway near said Magnolia filling station, fail to keep a proper lookout to ascertain if anyone was in the act of passing said dump truck to its left?"

It requires no citation of authority to support the proposition that a multifarious issue is error; the point at issue is whether or not issue No. 5 was multifarious. Under the authorities, as we understand them, issue No. 5 was not subject to appellants' exception. An issue, grouping a series of facts as constituting one act of negligence, is not multifarious. Only the jury has the power to relate the several acts, and from their relation determine whether or not they constitute negligence. On this very point Judge Hickman, now a member of the Commission of Appeals, writing the opinion in City of Abilene v. Moore, 12 S.W.2d 604, as Chief Justice of the Eastland Court of Civil Appeals, said (page 606):

"We have reviewed these authorities, and in the light thereof, and of the authorities therein cited, we have concluded that the special issue complained of in this case is not duplicitous. As above pointed out, there was only one real issue of fact submitted; namely, whether or not warning lights were present. Besides, it is the duty of the trial court, in framing an issue of negligence, to include in that issue every essential fact necessary to constitute negligence. Where the combination of two facts is necessary to constitute negligence, and neither one of the facts stated alone would do so, it would not be required of the trial court that he single out each evidentiary fact and then group them himself after the jury had returned its answer. But where two facts must concur in order to constitute negligence, those facts should be grouped in order to have a finding on the ultimate issue, which is the negligence of the party. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. In this case the city would not have been guilty of negligence in leaving the ditch open and exposed provided warning lights had been placed at the exposed portions. Neither would it have been guilty of negligence in failing to place warning lights at a place where there was no open and exposed ditch. The combination of these two facts is required to make out a case of negligence, and it is our opinion that the trial court did not err in so combining them."

Of the facts, submitted by question No. 5, it was undisputed that appellee "was approaching," and that the collision occurred as he attempted to pass the truck driven by Green.

But, if we are in error in our construction of issue No. 5, the error assigned against this issue was harmless. The judgment has support in the following issues and the jury's answers thereto, summary from appellee's brief:

"The judgment has ample support in the jury's finding in answer to Special Issue No. 2 that prior to the time Milton Green attempted to make the left-hand turn on the Beaumont-Houston Highway near the Magnolia Filling Station, he failed to extend his left hand to indicate that he intended to make a left-hand turn, and in answer to Special Issue No. 3 that such failure was negligence, and in answer to Special Issue No. 4 that such negligence on the part of

424

Milton Green was a proximate cause of the collision; and the finding of the jury to Special Issue No. 9 that Milton Green, in cutting any portion of the front end of said dump truck across the center line of said highway to the left was guilty of negligence under all the facts and circumstances, and in answer to Special Issue No. 10 that such negligence was the proximate cause of such collision in question."

 Issue No. 53 submitted to the jury was as follows:

"What sum of money, if any, paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff for the injuries, if any, proximately caused by the collision in question?"

To aid the jury in answering this question, the court submitted the following charge:

"In arriving at the amount of damages, if any, as above inquired about, you may take into consideration and consider the mental and physical pain, if any, heretofore suffered as a proximate result of said collision and you may consider such mental and physical pain, if any, that the plaintiff may suffer in the future as a proximate result of said collision and you may take into consideration the decrease, if any, in plaintiff's ability to earn money as a proximate result of the collision, if any, which he has suffered in the past, if any, and which he will reasonably suffer in the future, if any. In this connection you are further instructed that in assessing the damages, if any, you will exclude from your consideration any impairment, if any, as to earning money, as well as any mental and physical pain, if any, sustained or suffered as the natural and probable result of any other injury or infirmity other than that solely caused by the collision in question, if any, and you will exclude from your consideration any impairment as to earning money, as well as any mental and physical pain that the plaintiff will naturally and probably sustain and suffer in the future, if any, as the natural and probable result of any injury or infirmity other than that that will be solely caused by the collision, if any."

By their fourth proposition appellants assert that this charge "permitted and required the jury to make an award of double damages by instructing the jury to award damages for the loss of earning capacity prior to the trial and the loss of earning capacity in the future after the trial and to award damages for both past and future sufferings." The court's charge has support in the following rule of law announced by the court in Brown Cracker & Candy Co. v. Castle, Tex.Civ.App., 26 S.W.2d 435, 438:

"The true measure of damages for personal injuries is such a sum as will compensate the injured party for the injuries complained of and proved, to be arrived at by taking into account of the mental and physical pain suffered and which will be suffered, the earnings lost up to the time of trial, and the impairment of ability to earn money in the future on account of the injuries, physical pain, and suffering sustained by reason of the injuries, or which it is reasonably probable will be suffered in the future on account thereof, necessary and reasonable expenses incurred for the services of 'a physician and hospital bills, as the direct result of such injuries."

See, also, International & G. N. Railway Co. v. Schubert, Tex.Civ.App., 130 S.W. 708; St. Louis, S. F. & T. R. Co. v. Taylor, Tex.Civ.App., 134 S.W. 819; Galveston, H. & S. A. Railway Co. v. Heard et al., Tex.Civ.App., 91 S.W. 371; International & G. N. Railway Co. v. White et al., Tex.Civ.App., 120 S.W. 958, 959; Baker v. Harmon et al., Tex.Civ.App., 254 S.W. 517; International G. N. Railway Co. v. King, Tex.Com.App., 41 S.W.2d 234, 235.

 In submitting to the jury the issue of the amount of appellee's damages by question No. 53, the court instructed the jury that it could consider "the mental pain" suffered by appellee as a result of his injury. Appellants excepted to this element of the court's charge on the ground that the evidence did not raise the issue of "mental pain"; this assignment is brought forward by appellants' second proposition. The submission of an issue, or any element of an issue, not raised by the evidence, is error. Texas Jurisprudence, Vol. 13, page 263; Eastern Texas Electric Co. v. Baker et al., Tex.Com.App., 254 S.W. 933; Lodwick Lumber Co. v. Taylor, 39 Tex.Civ.App. 302, 87 S.W. 358. But, as we construe the evidence in this case, it was sufficient to raise the issue of "mental pain"; and therefore this proposition must be overruled. On this issue we quote the following testimony given by appellee. From appellants' brief:

"Q. When you woke up in Hotel Dieu, what was your condition of comfort or pain? A. Well, the first time I roused up, I just didn't know where I was and I didn't much care.

"Q. What was your condition with reference to comfort or pain? A. Well, I was in plenty of pain all right.

"Q. Where was your principal pain when you were in Hotel Dieu after you became conscious? A. Well, I hurt down in my stomach a whole lot, a burning sensation along in here (indicating).

"Q. What was your condition with reference to pain or comfort after you were removed to the home of Mrs. Burkhart at the time? A. Well, I had trouble in the front of my side, right up high here (indicating), and in my back right between my shoulder blades.

"Q. Is the pain you mention following work, or is it there all the time, or what are the facts? A. Well, part of it is there all the time. Every time I move my arms or stretch myself like this, I can feel the place at the top part of my—between my shoulder blades. That is very definitely there.

"Q. What character of pain is it from exertion, with reference to whether it is a mild pain or a severe pain? A. Well, it feels just a whole lot like it has just been beaten up, and if you exert too much, there is a stinging sensation right between my shoulder blades."

From appellee's brief:

"Q. After you started and were going around it, what was the next thing that came to your attention? A. Well, I woke up down here in Hotel Dieu, the next thing I know anything about.

"Q. Do you know approximately how many days later it was that you woke up at Hotel Dieu? A. I didn't have any idea. * * *

"Q. Did you, after you first aroused, as far as you know, remain in a conscious condition, or did you continue to lapse into unconsciousness again? A. Well, my thinking along about that time wasn't very clear.

"Q. Mr. Ford, how long approximately did you remain there in the hospital after you came to? A. I don't know just the exact point that I came to; and it would be hard to state how long I was there after that. I was in the hospital a couple of weeks.

"Q. While you were there, was there any doctor in attendance, and if so who? A. Well, I found out later—I mean while I was still in the hospital—that Dr. Pierson was the doctor.

"Q. Was he your family doctor? A. No, sir.

"Q. I'll ask you to state who sent him there, if you know of your own information. Do you know of your own information, without stating what somebody told you, who sent him? A. Why, he was the insurance doctor of the Yount-Lee Oil Company.

"Q. With 'reference to the compensation insurance? A. Yes. * * *

"Q. Now, then Mr. Ford, what was your condition when you remained in the hospital there, as long as you remained there, with reference to ease or pain? What was the situation? A. Well, as long as I was lying down in a prone position, why, I didn't hurt very much, but when I got up and tried to move, I couldn't bend over and get back up very easy, and couldn't pick up anything. * * *

"Q. Mr. Ford, while you were in Hotel Dieu, after you became conscious, I'll ask you as to whether or not anything was done for your back, and if so what? A. Well, they rubbed some stuff on it, and I was put in a kind of a jacket affair, brace of some kind; I don't know what it was. It was an outfit he strapped around here (indicating) * * *

"Q. How, then, when you were removed to Mrs. Burkhart's home, had or had not the cast or brace on the back been removed? A. No; I wore that some time after that; I don't recall. I got out of it as soon as I could. * * *

"Q. Mr. Ford, what has been the condition of your back with reference to whether it has remained in the same status since you left the hospital, or changed? A. Well, my back got so that I could move around; * * * whenever I worked, why, there was immediate pain at the top part of my back.

"Q. What effect, if any, does exertion have upon your back? A. Well, I can just stand so much of it and that's all I can take.

"Q. What is the condition in your back as compared to your condition prior to the collision? A. Well, I was a strong fellow prior to the collision; my back was good, and I could lift just most anything that any normal person could.

"Q. What has been your condition since, in your back, since the accident? A. Since the accident? Well, it's all right till I start to do something, and then I may not be able to get out of bed next morning if I had a hard day, with poles to climb or something like that, well, I just can't make it.

"Q. What is your condition with reference to your ability to lift objects and to strain in doing so, since the accident? A. Well, if I could hold on to it; I think I could lift quite a bit, it was tied around my hips, with my legs; but I can't reach down and get it; it just won't come up.

"Q. Mr. Ford, what effect if any does strong physical work have on you after you have done it, with reference to doing it again immediately or not? A. Well, I can't go to work immediately afterwards if I have done it, that's just all; I can hardly get out of bed.· It's awful hard to get up; I don't know; I just can't go; that's about all there is to it. * * *

"Q. What effect, if any, if you know, does the attempting to climb poles have upon your condition? A. I can climb all right, as far as my feet are concerned, but I can't hold on to them with my hands; on pressure like this I can feel that very definitely, and I have to push in like this to hold the pole.

"Q. What was your situation with reference to that prior to the time you were in the accident? A. Oh, I climbed all the time; there wasn't anything wrong with climbing.

"Q. What was the condition of your eyes prior to the accident, with reference to whether you wore glasses or could see good or what? A. I didn't wear glasses prior to the accident."

Appellee testified further that, prior to the collision, he could see "alright"; since the accident, "I got so that I would have a headache from reading; when I read a whole lot I have headache just generally and I went ·down and· decided there must be something wrong, and some one told me——"; since the accident, he cannot read very long, or "stand in the sunshine"; since the accident, the injury to his right side keeps hurting him, and every time he gets a cold, it seems to settle there.

"Q. Is it your statement to the jury now that you couldn't work when you went back to work? You were unable to work? A. Now like I have been working for the past two or three months. * * *

"Q. Mr. Ford, have you, since your employer Yount-Lee sold out its business, been general manager of any electrical department for anybody? A. No, sir.

"Q. Have you since the Yount-Lee sold out, been tendered any job that you could do without physical exertion? A. No, sir."

Under the following propositions of law from 13 Tex.Jurisprudence, 382, it was the prerogative of the jury to deduce "mental pain" from appellee's testimony:

"It is not necessary to prove the existence of physical pain or mental suffering by direct evidence; such suffering may be presumed in cases where it is the natural consequence of an injury such as that of which the plaintiff complains. Where serious bodily injury has been inflicted, some degree of physical and mental suffering is the necessary result; and in such cases the jury are authorized, without direct proof of such sufferings, to consider the pain both of body and mind in assessing the amount of damages."

In Turner v. McKinney, Tex.Civ.App., 182 S.W. 431, the court said (page 435):

"Mental suffering will be implied from illness, or injuries, accompanied by physical pain. [International & G. N.] Railway v. Johnson, 43 Tex.Civ.App. 147, 95 S.W. 595; Railway v. Currie, 64 Tex. 85; [Houston, E. & W. T.] Railway v. Simpson, [Tex.Civ.App.] 81 S.W. 353. Mental suffering may arise from a sense of discomfort or inconvenience. [International & G. N.] Railway v. Harder, 36 Tex.Civ.App. 151, 81 S.W. 356."

See, also, Texas Jurisprudence, Vol. 13, page 263; Lodwick Lumber Company v. Taylor, 39 Tex.Civ.App. 302, 87 S.W. 358; Texas Jurisprudence, Vol. 13, par. 222, p. 384; Texas Jurisprudence, Vol. 13, par. 203, p. 358; Texas & P. Railway Company v. Curry, 64 Tex. 85; Tweed v. Western Union Telegraph Co., 107 Tex. 247, 166 S. W. 696, 177 S.W. 957; Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.2d 807, 814.

We quote appellants' third proposition:

"The evidence being · undisputed that plaintiff suffered no decreased earning capacity as a result of his injuries of March 19, 1932, but reflected that instead of decreasing, his earning capacity substantially increased thereafter and continued to increase over a period of five (5) years up to the date of the trial, the trial court erroneously permitted and required the jury to

consider as an element of recovery plaintiff's decreased earning capacity, thereby permitting and requiring the jury to use as a basis of award an element of damages that did not, in fact, exist."

Proof must be presented to support an allegation of "diminished earning capacity." Gulf, C. & S. F. Railway Co. v. Gardner, Tex.Civ.App., 266 S.W. 809; Eastern Texas Electric Company v. Baker, Tex.Com.App., 254 S.W. 933. The evidence in this case abundantly supports the issue of "diminished earning capacity." On this issue Dr. Davis testified:

"Well, my opinion is that over a case of that length of time, that there is some impairment of the circulation that has taken place; that it is not probable that it will completely—be a complete recovery. I don't think he will overcome it.

"Q. What are the probabilities of a recovery by him at this time from that condition? A. They are not good.

"Q. What effect does a condition such as you found there upon the straining of a man's shoulders and arms in attempting to do work, if any? A. It would weaken the muscular force. * * *

"Q. Doctor, do you believe that this man was able to do and perform hard manual labor when you first saw him in 1935? A. Do I think he was able to perform manual labor at that time?

"Q. Yes, sir. A. I wouldn't think he could perform hard manual labor comfortably, no.

"Q. At that time—do you think he was able to perform hard manual labor when you saw him again in 1936? A. No.

"Q. And you find the conditions to be the same now? A. Well, I said practically the same, yes, sir."

In addition to his testimony quoted above, appellee testified that, since his injury, he had lost from his work about three and a half months; that, during the last few months he worked in a garage and "that he had been looking for a job." After his injury he returned to work for Yount-Lee Oil Company for $180 per month; he remained with the Yount-Lee Oil Company for about three and a half years; there had been an increase in the wages in the Yount-Lee Oil Company in the period between the accident and the time that he left and his salary was increased along with the others; he did not remember just when the increase was made, but he received a raise shortly before they sold out to the Stanolind Oil Company to $225 per month; after Yount-Lee sold out to the Stanolind he went to work for the Stanolind and they kept him about a month when they told him that they would not need him any longer; several weeks later he went to work for the Gulf Oil Corporation at $165 per month. He worked for the Gulf about a year and a half:

"Q. Did you continue at the same wages you started with them or were they raised or lowered, or what? A. I think there was a general raise to $175.00 at the first of the year.

"Q. First of which year? A. This year.

"Q. Are you still in their employ? A. No, sir.

"Q. If not, when did you leave? A. A little over two months ago.

"Q. What was the occasion for your leaving? Did you quit or did they let you out? A. They let me out."

Under the evidence it was the prerogative of the jury to say whether or not appellee's injuries interfered with his ability to do work and to hold a job; his ability to perform the duties of a trained engineer; whether or not his injuries kept him from working for the Gulf Company or some other company in his profession. The third proposition is overruled.

Appellants present the point under the 5th proposition that appellee "suffered no damages" as a result of his injury; on the evidence quoted above we overrule this contention.

Under propositions 5, 14, 15, 16, and 17, appellants make the following points:

(a) "Milton Green was not guilty of any act of negligence operating as a proximate cause of the injury to the plaintiff."

(b) "That there was not evidence of any probative force that immediately prior to the collision but that Green had made a complete left turn and crossed over the center of the highway, as found by the jury in answer to special issue No. 49, or that he failed to hold out his hand before making such turn or that such act was negligence and a proximate cause of the injuries to plaintiff, as the overwhelming preponderance of the evidence was to the effect that Green had already crossed over the center of the highway and completed his turn before the accident and that prior to and as he made such turn, he held out his hand to so indicate, and seeing that

plaintiff had failed to observe his signal and to observe the movements of the dump truck and that the plaintiff was going to pass on the left of the highway instead of on the right as required by law, he brought the truck to a complete stop in an effort to avoid the collision."

(c) "There was no evidence of any character tending to show that Green failed to keep a proper lookout at the time in question or that such failure was negligence or a proximate cause of the injuries to Ford as all of the evidence introduced upon the trial showed without controversy that Green not only was keeping a proper lookout for the car driven by Ford but plaintiff wholly failed to show by any evidence that Green was not keeping a lookout and that he could have done anything, under the circumstances, other than was done, in order to have prevented a collision."

(d) "Green could not, in the exercise of ordinary care, have foreseen that plaintiff was going to drive his car to the left of the highway and into Green's truck, as the plaintiff was required to drive to the right of the highway, which side of said highway was clear and unobstructed, and under the jury's findings in answer to special issue No. 49, there was sufficient room for plaintiff to have passed to the right had he been driving his automobile on the right-hand side of the highway as required by law."

(e) "It was prejudicial error for the trial court to have entered judgment upon the basis of the jury's findings in response to the issues submitted on the question of Green's negligence, that is, that Green failed to hold out his hand, and that same was negligence and a proximate cause; that Green failed to keep a proper lookout and that same was negligence and a proximate cause; and that Green had cut to the left across the center of the highway and that same was negligence and a proximate cause for the reasons, first, there was no evidence of any probative force that Green failed to extend his hand, but all of the credible evidence upon the question showed conclusively that he did extend his hand, second, there was no evidence of any character that Green failed to keep a proper lookout for the plaintiff, but all the evidence offered upon such question was that he did keep a lookout; third, that, at the time of the collision, Green had completed his left turn and was across the center line of the highway, leaving the right side thereof unobstructed with sufficient room for plaintiff to have passed, had he been driving his automobile as required by law."

The trial of this case, as in Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683, appellant Wells was represented by Sewell, Taylor, Morris & Garwood; appellee Ford, as was appellee Henderson, by Orgain, Carroll & Bell; South Texas Lumber Company, by Pipkin & Pipkin; the Texas Employers' Insurance Association, by Calhoun & Marcus. Appellee was the driver of the car, and Henderson was riding with him. The points presented by appellants under their propositions 5, 14, 15, 16, and 17 are overruled as being necessarily involved in Wells v. Henderson, and there ruled against them. However, we have again reviewed the evidence as brought forward in this record, and it is our conclusion that the issues brought forward by these propositions have satisfactory support.

By their 6th and 7th propositions appellants assert that the court erred in refusing to submit to the jury the following issues, which had support in their pleadings:

(a) "Do you find from a preponderance of the evidence that on the occasion in question, plaintiff undertook to pass the truck at a reckless and dangerous rate of speed?" * * *

(b) "Do you find from a preponderance of the evidence that on the occasion in question, plaintiff was operating the automobile in which he was riding at a dangerous rate of speed?" and the issues of negligence and proximate cause as they relate to issues (a) and (b). These requested issues were in substance submitted by the court's charge:

Special Issue No. 22: "Do you find from a preponderance of the evidence that the plaintiff, Ford, prior to and at the time of said collision, was operating same at a negligent rate of speed under all the facts and circumstances?"

Special Issue No. 25: "Do you find from a preponderance of the evidence that the plaintiff, Ford, prior to and at the time of said collision was operating the Ford pickup truck in excess of the speed of 45 miles per hour?" which the jury answered "No".

By the 8th proposition it is asserted that the court erred in refusing to submit the following requested issue which had

support in the pleadings, together with the issues of negligence and proximate cause:

"Do you find from a preponderance of the evidence that the plaintiff, W. G. Ford, failed to keep a proper lookout for the movements of the dump truck in question?"

In substance, this requested issue was also submitted by the court's charge by special issue No. 27, to which the jury gave a negative answer:

"Do you find from a preponderance of the evidence that the plaintiff, Ford, as he approached said dump truck and attempted to pass the same, failed to keep a proper lookout to ascertain whether or not he could pass same with reasonable safety to himself?"

■ By the 9th proposition it is asserted that the court erred in refusing to submit their issue No. 11, together with the issues of negligence and proximate cause:

"Do you find from a preponderance of the evidence that plaintiff, W. G. Ford, failed to give such assistance to the driver of the dump truck in question in passing and overtaking such driver as the circumstances reasonably demanded in order to obtain clearance and avoid the accident in question?"

This requested issue was also substantially submitted by the court's charge. In addition to the issues copied above from the charge, the following additional issues were submitted and answered as indicated; summary taken from appellee's brief:

Special Issue No. 31, "Do you find from a preponderance of the evidence that the plaintiff, Ford, prior to attempting to pass said dump truck in question, failed to give a signal by horn of his intention to attempt to pass said dump truck?" which the jury answered, "No". Special Issue No. 25, "Do you find from a preponderance of the evidence that the plaintiff, Ford, prior to and at the time of said collision, was operating the Ford pickup truck in excess of the speed of 45 miles per hour?" which the jury answered "No". Special Issue No. 21, "Do you find from a preponderance of the evidence that the plaintiff, Ford, prior to and at the time of said collision was operating same at a negligent rate of speed under all the facts and circumstances?" which the jury answered "No". Special Issue No. 18, "Do you find from a preponderance of the evidence that the plaintiff, Ford, as he was attempt-

ing to pass said dump truck, failed to have such Ford roadster under proper control?" which the jury answered, "No".

■ We give appellants' 10th proposition:

"It having been shown upon the trial of the cause by competent testimony that any disability or loss of earning capacity that the plaintiff suffered was due to an enlarged or athletic heart, which condition had been present for a long time prior to his injuries of March 19, 1932, or was due to an accident which he sustained on March 7, 1934, at which time he injured his back, and that either or both of such conditions were the sole cause of plaintiff's disability and loss of earning capacity, it was prejudicial error on the part of the trial court to refuse to submit for the jury's determination appellants' requested issues Nos. 17 and 18, which, omitting the formal parts thereof, were:

17. "Do you find from a preponderance of the evidence that any disability, if any, that plaintiff is now suffering, is not the result of the accident sustained by him on March 7, 1934?"

Then to submit in connection therewith appellants' requested issue No. 18, omitting the formal parts:

"Do you find from a preponderance of the evidence that such injury is a sole cause of plaintiff's disability, if any?"

This proposition does not constitute error. Under the undisputed evidence appellee was in the collision; suffered serious injuries; in an unconscious condition, and confined in a hospital for several days; was unable to return to work for thirty days. Had requested issue No. 17 been submitted and answered in favor of appellants, it would not have supported a verdict in their favor, for the reason that it submitted only a partial defense. The same must also be said of requested issue No. 18. Speaking for the Commission of Appeals in Kenney v. La Grone, 127 Tex. 539, 93 S.W.2d 397, construing the following requested issues (page 398):

"Is Mrs. Rachel La Grone's condition the result of a disease known as eczema?"

"Is Mrs. Rachel La Grone's condition the result of some disease other than the application of the X-ray?"

Judge German said,

"It is obvious that these requested charges were not correct, and, if answered

in the affirmative, would not have been a complete defense to plaintiff's alleged cause of action. Even if her condition at the time of the trial was due to eczema, nevertheless she could have suffered various injuries as a result of the X-ray burns, as claimed by her, and her condition could have been materially different at the time of the trial from what it was, as shown by her testimony, immediately after the treatment. It is undisputed that to some extent her condition was brought about by reason of the fact that she had eczema, as that was the ailment for which the X-ray treatment was administered. The question really resolved itself into an inquiry as to what extent, if any, the eczema contributed to the injury and damages suffered by plaintiff."

See, also, Wichita Falls, R. & Ft. W. Railway Company v. Combs, Tex.Com. App., 268 S.W. 447; Texas Jurisprudence, Vol. 13, pars. 238 and 269; Pedigo & Pedigo v. Croom, Tex.Civ.App., 37 S.W.2d 1074; Times Publishing Company v. Ray, Tex.Civ.App., 1 S.W.2d 471. Issue No. 53 of the court's charge, and the charge submitted therewith, given above, fully protected appellants' rights on all points suggested by the 10th proposition.

By their 11th proposition appellants complain of the refusal of the court to submit their requested issue No. 21:

"Do you find from a preponderance of the evidence that plaintiff's present disability, if any, is not due solely to physical infirmities from which plaintiff was suffering prior to March 19, 1932?"

The refusal to submit this issue was not error, for the same reason that the court was justified in refusing to submit the issues brought forward by the 10th proposition.

By their 12th proposition appellants assert that appellee deliberately injected into the case the fact that appellants "were covered by some form of insurance at the time of the accident." This contention is denied." The only "insurance" issue brought out on the trial of the case related to Compensation Insurance, plead by the parties and supported by the evidence.

We give appellants' 13th proposition:

"While the plaintiff Ford was testifying upon cross examination, it developed that he had theretofore testified by deposition, and certain statements were made by the plaintiff contrary to facts testified by him in said deposition, so after laying a proper predicate for impeachment, by appropriate questions, defendants Wells and Green then attempted to offer in evidence such deposition in its entirety for impeachment purposes, which offer was refused by the trial court, thereby committing prejudicial error."

This proposition is too general; it does not point out the particular portions of the depositions appellants sought to introduce. However, the proposition is overruled as if in due form. After the court refused them permission to introduce the entire deposition as impeaching appellee, appellants offered the particular portions of the deposition pertinent to their inquiry.

By their 18th proposition appellants assert that the verdict assessing appellee's damages at $6,000 was excessive. This contention is overruled; the evidence quoted above supports the verdict.

By the 19th proposition it is asserted that the jury was guilty of misconduct, in that, during their deliberations, "Certain of the jurors made statements in the presence of other jurors to the effect that the truck driven by Green was covered by liability insurance and said jurors proceeded to discuss the fact that any judgment rendered by them against appellants would not be paid by appellants but by said insurance company."

On this point appellants offered the testimony of two witnesses, jurors Barbin and Gary. We quote as follows the testimony from the juror Barbin:

"Q. After you were retired to consider your verdict, state whether or not that there was some discussion arose with regard to whether or not the insurance testified about would compensate Mr. Ford for any damages you would render. A. The question was brought up after we had already rendered our verdict and was waiting on the judge. Somebody mentioned it, about whether they had insurance or not.

"Q. It wasn't discussed before that time? A. No, it wasn't, not that I remember of anything bringing it up, but it was brought up at last. * * *

"Q. Do you recall any discussion of insurance before you arrived at your verdict? A. No, I sure don't.

"Q. That was before the verdict was returned into the court room, wasn't it? A.

The discussion had come up there later, and was after we had signed it and was waiting for the judge.

"Q. What was said at that time? A. Somebody had mentioned about who was going to pay for it, and I said that it did not make any difference who was going to pay for it, not let that effect them in any way. That is all I said about it, and that is all I heard. * * *

"Q. Isn't it a fact that in arriving at you verdict of $6,000.00 that you, yourself, believed at that time that any verdict that you rendered would be paid by an insurance company? A. No, I didn't know who was going to pay for it.

"Q. And that you thought it would be paid by the compensation insurance company? A. I didn't know.

"Q. That is all. * * *

"Q. Mr. Barbin, the insurance that was mentioned about Mr. Ford, you understood that would be workman's compensation insurance, didn't you? A. Yes, sir.

"Q. You know what that is, don't you? A. Yes, sir.

"Q. You know that does not cover collisions and things of that sort, but it is insurance that the employer gives on an employee? A. That is right.

"Q. At the time you talked to Mr. Bell, Mr. Pipkin was present at that time, wasn't he? A. Yes, sir.

"Q. That is all."

In part, the testimony of juror Gary supports appellants' assignment; this juror testified further that juror Russell also discussed "insurance," but appellants did not call juror Russell; they had three other jurors in attendance on the hearing of their motion for new trial, but did not tender them as witnesses. As held in D. & H. Truck Line v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, 663;

"A general rule of long standing in this state is that the improper injection into a jury trial of the fact that the defendant is protected by insurance constitutes reversible error."

To invoke that proposition the evidence must not only raise the issue of "insurance," but the issue, unless one of law, must be found by the court in support of the assignment. Here, though the issue was raised by the evidence on the testimony of the juror Gary, on the testimony of juror Bargin, the court was justified in finding it against

appellants—that the issue of liability insurance was not discussed, but only the issue of compensation insurance, which was both plead and supported by the evidence; and that that issue was discussed only after the jury had made its final decision on all questions submitted by the court's charge. The following authorities support the judgment overruling the motion for new trial, as against this assignment: Goodrich v. Pandem Oil Corporation, Tex.Com.App., 48 S.W.2d 606, 607; Blue Diamond Motor Bus Company, et al., v. Hale et ux., Tex. Civ.App., 69 S.W.2d 228; Davis, Agent, v. Christmas, Tex.Civ.App., 248 S.W. 126; El Paso Electric Railway Company v. Cowan, Tex.Civ.App., 257 S.W. 941; James A. Dick Company v. Yanez et al., Tex.Civ. App., 55 S.W.2d 600.

By the 20th proposition appellants complain that, while they were attempting to offer appellee's deposition referred to above, the trial court "proceeded to read certain parts of said deposition and to comment thereon, such comments being on the weight thereof and highly prejudicial to appellants, as the court in making such comments informed the jury that such evidence being offered by appellants was immaterial and did not mean anything and was not in impeachment of the plaintiff's testimony given from the stand, and was not, in fact, even a denial of the witness' statement." Appellants make the following statement in italics in support of this assignment:

"Mr. Howell: We ask him to commence on the top of page 25 and read it, then, in order that the jury can get a complete connection.

"Mr. Bell: We have no objection to anything that applies to that.

"The Court: I'm not going to do it. You pick out what you want. You haven't laid the predicate for impeachment, and now, if you just want to controvert his testimony, pick out what part of the testimony you want to controvert.

"Mr. Howell: That's what we are doing.

"The Court: Well, what is it?

"Mr. Howell: We *ask him to commence on line 3 of page 25 and read all that page down through line 25 on page 25, and all of page 24 and 25, we are asking him to read, in order that the jury can get the complete connection about those brakes and the relining of them.*

"Mr. Bell: *We have no objection, Your Honor.*

"The Court: *Let me see it. That's stricken out; it's immaterial. It's immaterial and don't lay any basis for impeachment or denial.*

"Mr. Sewell: We are just trying to connect up his statement.

"The Court: *It don't connect up anything; it is just a controversy here between the lawyer and the witness.* * * *

"Q. Now why do you say the engine could be fixed up for fifty or seventy-five dollars but you doubt if they would spend that much? Answer. That is just a supposition:

"The Court: 'Just a supposition!' A supposition is nothing.

"Mr. Howell: We are not offering that, Your Honor. We are offering on another page, page 25, if the court please. You are reading from page 24."

This proposition is overruled for the following reasons: (1) Appellants did not except to the remarks at the time they were made, but only in the motion for new trial. The court gave the following charge to the jury:

"You are the exclusive judges of the credibility of the witnesses and of the weight to be given the evidence, but you will take the law from the court as given you in this charge and in such other special charges, if any, as may be given to you, and you will be governed thereby * * * bearing in mind the foregoing instruction, you will answer the following questions as you may find the fact, or facts, to be."

On this point in Sabine & E. T. Railway Company v. Brousard, 75 Tex. 597, 12 S.W. 1126, our Supreme Court said:

"Appellant's first assignment of error is that the court erred in making comments upon the testimony of defendant's first witness during said trial, in the presence and hearing of the jury, to the effect following, to-wit: 'The last half-hour, he thought, had been unnecessarily consumed, and was not calculated to enlighten court or jury.'

"It appears that these remarks were not excepted to at the time they were made, nor until after the court had adjourned for the day.

"When the remarks are considered in connection with the evidence of the witness, and the subsequent charge of the court, by which the jury were told that they were the judges of the weight to be attached to the testimony, and that it was not the province of the court to pass on that question, or to express an opinion as to the value of the testimony admitted, but they were to be controlled by their own views, we do not think the jury could have been improperly influenced by the remarks.

"The proper time to have taken the exception was when the remarks were made, and in the presence of the jury. If the objection had been then made, an opportunity would have been furnished the court to have removed any improper effect that they were likely to produce by proper explanation to the jury. Not having been then taken, the objection ought not to be considered now."

See, also, Valdez v. O'Connor et al., Tex. Civ.App., 17 S.W.2d 835. The court's remarks were not of a nature to invoke the following proposition from Southland Greyhound Lines v. Matthews, Tex.Civ.App., 74 S.W.2d 713, 716:

"When the remark is of such a nature that its injurious effect cannot be removed by the judge withdrawing it or by instructing the jury not to consider it, motions to that effect are not required."

The remarks were not inflammatory, and, on proper exception, could have been withdrawn. (2) The testimony to which appellants direct their assignment was not in support of their predicate of impeachment; therefore, it was not admissible for impeachment purposes, and the court's comment in relation thereto was immaterial and without prejudice to appellants' rights. Texas & P. Railway Co. v. Phillips, 91 Tex. 278, 42 S.W. 852.

We have given most careful consideration to all of appellants' propositions, and it is our conclusion that they are without merit.

The judgment of the lower court is in all things affirmed.

Affirmed.