## TROTTER v. UNITED STATES.
### Civ. No. 2678.

United States District Court,
W. D. Louisiana,
Lake Charles Division.
Feb. 9, 1951.

646

Moss & Graham, Lake Charles, La., for plaintiff.

William J. Fleniken, Acting U. S. Atty., Shreveport, La., for defendant.

PORTERIE, District Judge.

This is an action brought by J. Howard Trotter, a resident of Lake Charles, Louisiana, against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. The plaintiff alleges that he was driving his automobile on a public highway near Caplen, Texas (being the highway running between Galveston and Port Arthur, Texas), when it was struck by Coast Guard vehicle No. T10724, owned by the United States, and then and there negligently operated by a member of the United States Coast Guard, who was then acting within the scope of his employment and in the line of duty. Plaintiff further claims that he sustained serious injuries, damages and losses in the total amount of $79,550, and he further claimed that reasonable attorney's fees, in the sum of twenty percent of the sum to be recovered, should be allowed to his attorneys, to be paid out of the judgment to be recovered.

The defendant filed an answer admitting that (a) the action was proper under the Federal Tort Claims Act, (b) the accident involved the vehicles as alleged, (c) the Coast Guard vehicle was being operated by Roden P. Davisworth, a member of the United States Coast Guard, then acting within the scope of his employment in the line of duty, but denying that the Coast Guard vehicle was negligently operated by Davisworth at the time of the accident. The defendant alleged that the accident was caused solely by the negligence of the plaintiff. In the alternative, the defendant alleged that, if defendant was negligent, the plaintiff was guilty of contributory negligence sufficient to bar recovery and, further in the alternative, the defendant pleaded that the plaintiff had the last clear chance to avoid the accident.

### Findings of Fact.

There were no eyewitnesses other than the plaintiff, who was driving his automobile and was unaccompanied, and Mr. Davisworth, who was driving the Coast Guard truck, and who was also unaccompanied.

Plaintiff left Galveston, Texas, on the 1:00 o'clock afternoon ferry, driving his Cadillac sedan on a trip to Lake Charles, Louisiana, after having been engaged in buying rice in the territory in Texas assigned to him by two mills for which he purchased rice on a commission basis.

He was on Texas Highway No. 87, traveling in an easterly direction, and the ferry ran from Galveston to Port Bolivar. The ferry arrived at Port Bolivar about 1:30 and he continued his trip a distance of approximately twenty miles on Highway 87, a black-topped highway, to the point of the accident, which occurred at about 2:15 p. m.

The weather was murky and it had been raining and misting intermittently and he had his storm lights on his car, although visibility was such that one could see traffic on the highway for a distance of several hundred yards.

His car entered the western end of a moderate "S" curve, at which time he saw the Coast Guard truck enter the eastern end of the same curve, a distance that he approximated at 300 yards away. He saw the truck swing to its left side of the road, which was the side of the road upon which Mr. Trotter was traveling, being Mr. Trotter's right hand side, and being the wrong side of the road for the Coast Guard truck, which was traveling in a westerly direction.

There was a line of guard posts on the right or south side of the curve on its western end, and there were no such guard posts on the opposite or north side, except at the eastern end of the "S" curve.

Mr. Trotter was confined by the guard posts to the area of the highway and shoulder preventing him from going off of the road to his right to get out of the way of the oncoming truck.

The width of the black-top was approximately 17 feet; there was a line of wood guard posts embedded in the ground on the south side of the highway on the western end of the curve; these posts were seven feet and eight-tenths inches from the edge of the black-top; each post was from six to eight inches in diameter; the posts were about thirty-nine feet apart; there were no guard posts on the north side of the highway near the western end of the curve.

The accident happened, insofar as the length of the highway is concerned, between the second and third guard posts; the point of the accident was on the western end of the "S" curve.

After Mr. Trotter entered the western end of the curve and the Coast Guard Truck entered the eastern end, the truck continued to approach, traveling on its left or wrong side of the road. As the truck got closer, Mr. Trotter expected it to move over to its right side and allow him to pass in his proper lane of traffic. Mr. Trotter began to blow his horn, put on his brakes, and slow his car down. The line of guard posts was on Trotter's right side. Trotter says he even gave consideration to taking a chance of getting on the other side of the highway, but he decided not to try that, as he hoped that the oncoming truck would finally move over to its side of the road. At no time did it appear that the driver of the Coast Guard vehicle realized that his truck was traveling on the wrong side of the highway or approaching Mr. Trotter's automobile. The failure of Mr. Davisworth, driver of the Coast Guard truck, to realize the situation is confirmed by his own testimony on that important point.

The two vehicles collided, practically head-on, with the principal point of impact being on the left side of the front of each vehicle.

After the collision, the front of the Trotter automobile was almost at a right angle with the road, about three feet of the car on the black-top on the right-hand side of Trotter's right of way.

The Coast Guard truck was on the wrong side of the highway.

Mr. Davisworth, driver of the Coast Guard truck, stated that he saw the Trotter car as it approached the other end of the curve and he remembers entering the eastern end of the curve; that upon completion of the curve, there was a vehicle immediately in front of him and the collision then occurred. He claimed to have been on his right side of the highway, and he also stated that the Trotter car was just a "very

few feet" from him when he first observed it. He estimated the Trotter car was about 200 feet from him when he saw it enter the curve and it was right on him when he next noticed it. He explained that his line of vision would not follow the approaching car in the other end of the curve.

On that portion of the official report of the accident to the Coast Guard, made by Davisworth, asking him to describe what happened, his answer was: "Don't know. Remember going into a curve". The Court admitted the report only as to affect the credibility of Davisworth.

Mr. Trotter blew his horn; Mr. Davisworth says he did not hear it.

We believe it is established that (a) the plaintiff, at the time of the accident was driving his automobile in a careful manner, completely on his right side of the highway, (b) the driver of the Coast Guard vehicle was driving his truck in a negligent manner, approaching plaintiff on the wrong side of the highway, (c) the driver of the Coast Guard vehicle was not maintaining a proper lookout in that, by his own admission, he saw plaintiff's automobile about 200 feet away approaching him and did not see it again until the very moment of impact, when it loomed up in front of him, (d) the two vehicles collided, practically head-on, at a point south of the center line of the highway, in plaintiff's lane of traffic, (e) there was a line of guard posts on the shoulder to the right of plaintiff's car which prevented plaintiff from going further off the highway in an effort to avoid the accident, (f) plaintiff blew his horn, applied his brakes and retarded the speed of his automobile, expecting the Coast Guard vehicle to resume its proper lane of traffic until the very moment of collision, (g) after the collision, the front portion of the Coast Guard vehicle was across the south of the center line of the highway and plaintiff's automobile was entirely on the south of its right-hand side of the highway, with the rear of the automobile on the shoulder of the highway, (h) the accident occurred in the western end of a moderate "S" curve, (i) there was no evidence of any negligence on the part of the plaintiff, (j) the negligence of the driver of the Coast Guard vehicle was the direct and proximate cause of the accident.

### The Law of the Case.

The action is under the Federal Tort Claims Act. 28 U.S.C.A. §§ 1346, 2671–2680. There is no issue on jurisdiction.

Section 2674 of Title 28 of the United States Code Annotated, being a part of the Federal Tort Claims Act, reads, in part, as follows: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

We believe that a private individual would be accountable in this case "under like circumstances".

The Texas doctrine of respondeat superior would keep the defendant, if a private person, in court. United States v. Campbell, 5 Cir., 172 F.2d 500; Galveston H. & S. A. Ry. Company v. Henefy, Tex.Civ. App., 99 S.W. 884; Shell Petroleum Corporation v. Magnolia Pipe Line Company, Tex.Civ.App., 85 S.W.2d 829; LeSage v. Pryor, 137 Tex. 455, 154 S.W.2d 446; Gatz v. Smith, Tex.Civ.App., 205 S.W.2d 616; Uniform Act Regulating Traffic on Highways, Vernon's Texas Civil Statutes, 6701d.

By a preponderance of the evidence, it was established that the driver of the Coast Guard vehicle was in the service of the United States Coast Guard, stationed at Galveston, Texas; that he was an Electrician's Mate—Telephone; that he was on a tour of duty and official business for the United States Coast Guard, traveling along Texas Highway 87 on the day and at the time of the accident, inspecting and repairing United States Coast Guard telephone lines; that he left Galveston, Texas, at 7:00 o'clock a. m. in the Coast Guard vehicle for the purpose of making visual inspection of the telephone lines along the highway; that that was his purpose in leaving Galveston that morning and that his tour was from Galveston to High Island, Texas, which was east of and beyond the point of the

accident; that he was on his return trip to the Coast Guard base at Galveston when the accident occurred.

■ "It is well settled that the drivers of vehicles on highways are under a duty to exercise reasonable care to avoid injury to any one." Dixie Motor Coach Corporation v. Lane, 5 Cir., 116 F.2d 264, 266.

The driver of the Coast Guard vehicle had to maintain a proper lookout and to see what he clearly could have seen ahead of him in meeting the plaintiff's car. Harper v. Texas & Pacific Railroad Co., Tex.Civ. App., 146 S.W.2d 426; LeSage v. Smith, Tex.Civ.App., 145 S.W.2d 308; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731; Loving v. Laird, 122 Tex. 18, 42 S.W.2d 483, 50 S.W.2d 260.

■ It is negligence to drive on the wrong side of the road. OK Theater Corporation v. Rehmeyer, Tex.Civ.App., 115 S.W.2d 985; Bettis v. Watkins, Tex.Civ. App., 140 S.W.2d 280; Wright v. McCoy, Tex.Civ.App., 131 S.W.2d 52; Texas Farm Products Co. v. Johnson, Tex.Civ.App., 190 S.W.2d 178.

There are numerous other decisions of the Texas courts relating to failure to drive on the right side of the road, and dealing with the doctrine of proximate cause. Some of these are: Calhoun v. Grant, Tex. Civ.App., 129 S.W.2d 752; Collins v. Smith, Tex.Civ.App., 170 S.W.2d 562, affirmed 142 Tex. 36, 175 S.W.2d 407.

■ The gross negligence of the driver of the Coast Guard vehicle was the proximate cause of the collision with plaintiff's car.[1]

The only possible action plaintiff could have taken, other than the several precautions he did take, would have been suddenly to drive to his left side of the highway, with the slim hope that the driver of the Coast Guard vehicle would not get back in its proper lane of traffic. Plaintiff was blowing his horn and naturally expected, even to the moment of the actual collision, that the driver of the Coast Guard vehicle would come to the realization that he was partly on the wrong side of the highway and would turn into the right side and thus avoid a serious collision. The plaintiff cannot be held to be negligent for failure to drive his own car on the wrong side of the highway in view of the serious emergency and imminent peril caused by the negligence of the driver of the Coast Guard vehicle. This cannot be contributory negligence on the part of the plaintiff. The collision was caused solely and proximately by the negligence of the driver of the Coast Guard vehicle; there was no contributory negligence on the part of the plaintiff.

### Damages.

■ 1. Damages to Personal Property. The proper measure of damages to an automobile, in the State of Texas, is the difference between the market value of the automobile before it was wrecked and the market value of the automobile in its wrecked condition. Whitley v. Kinsel Motor Company, Tex.Civ.App., 94 S.W.2d 202; Anderson v. Reichert, Tex.Civ.App., 116 S.W.2d 772; Commercial Standard Insurance Company v. First State Bank of Vernon, Tex.Civ.App., 142 S.W.2d 621; Tinney v. Williams, Tex.Civ.App., 144 S.W. 2d 344; Horton v. Schultz, Tex.Civ.App., 148 S.W.2d 252. The same general rule applies to damages to other personal property. Prudential Fire Insurance Company v. Williams, Tex.Civ.App., 148 S.W.2d 264; Higgins v. Stand Lloyds, Tex.Civ.App., 149 S.W.2d 143. The reasonable market value of plaintiff's car at the time of the accident was $2,000; it was a total loss as a result of the accident. We find the plaintiff's loss for damages to his automobile sustained in this accident is $2,000. And for the loss of plaintiff's eyeglasses, $21.42.

■ 2. Medical, Hospital and Incidental Expenses. Under the Texas law, an injured person is entitled to recover reasonable expenses incurred for medical treatment, hospital bills, ambulance service, etc.,

---

1. He knows nothing of the conditions leading to the accident. Then, to the question: "Approximately how close were you to this automobile when you first observed it?", he made the following answer: "The exact distance I don't know. It couldn't have been but a very few feet."

if the same result from injuries sustained in consequence of defendant's wrongful act. Bull-Stewart Equipment Company v. Sparra, Tex.Civ.App., 109 S.W.2d 784; Owl Taxi Service v. Saludis, Tex.Civ.App., 122 S.W.2d 225; Yellow Cab Company v. Underwood, Tex.Civ.App., 144 S.W.2d 291. The bill for ambulance service was in the amount of $21; the hospital bill was $52.30; the bill for medical services in Beaumont was $35; the cost of a round trip from Lake Charles to Galveston, including the bill for Dr. Herman's medical services was $140.

■ 3. Injuries, Pain and Suffering, and Mental Anguish. Each personal injury action must be judged on its peculiar facts, and the quantum of damages awarded must be measured primarily upon the facts established in each particular case. McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710; Leyendecker v. Harlow, Tex.Civ.App., 189 S. W.2d 706.

■ Past and future mental and physical pain and suffering are proper elements of damages resulting from personal injuries in Texas. Wells v. Ford, Tex.Civ.App., 118 S.W.2d 420; Eastern Iron & Metal Company v. McMorrough, Tex.Civ.App., 135 S.W.2d 750; Western Union Telegraph Company v. Homer, Tex.Civ.App., 157 S. W.2d 659, affirmed 140 Tex. 193, 166 S.W. 2d 684; Laney v. Rush, Tex.Civ.App., 152 S.W.2d 491; El Paso Electric Company v. Gregston, Tex.Civ.App., 170 S.W.2d 515.

■ The record establishes that the plaintiff sustained serious and painful injuries in the accident; that plaintiff had severe pain for a period of several days and suffered pain and discomfort, at times, even to the date of trial; and that the plaintiff sustained permanent injuries which were sufficiently serious to greatly incapacitate him in his line of work and activity. For his injuries, temporary and permanent, and for shock to his nervous system, his physical pain and suffering and his mental anguish, plaintiff is awarded the sum of $2,500.

■ 4. Disability and Loss of Past and Future Earnings. A proper element of damage resulting from injuries is the loss of past and future earnings caused by a person's diminished earning capacity. Eastern Iron & Metal Company v. McMorrough, Tex.Civ.App., 135 S.W.2d 750; Wells v. Ford, Tex.Civ.App., 118 S.W.2d 420; McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710; El Paso Electric Company v. Gregston, Tex.Civ.App., 170 S.W.2d 515; Hyde v. Marks, Tex.Civ.App., 138 S.W.2d 619; Texas & New Orleans Railway Company v. Skeen, Tex.Civ.App., 149 S.W.2d 1060; Marsh v. Williams, Tex.Civ.App., 154 S.W.2d 201; Triangle Cab Company v. Taylor, Tex.Civ.App., 190 S.W.2d 755, affirmed 144 Tex. 568, 192 S.W.2d 143.

The plaintiff was a rough rice buyer, working on a commission basis. His territory for the buying of rice was in the Houston, Texas, area and he was the rice buyer in that area for two separate milling companies. Plaintiff had a large territory in Texas, west of Houston, to cover during the rice buying season, which began on August 1st of each year and the season lasted until August 1st of the succeeding year, during which period he bought rough rice at various points in Texas for his two companies as long as there was rice available.

■ After a full consideration of the elaborate evidence, we believe that an award of $5,000 for the loss of earnings for the remainder of the 1948–49 rice buying season (it looked like $30,000 for that year) is about correct and fair.

■ On arriving at the amount to be awarded the plaintiff for his loss of future earnings, we have to consider his age of 63 years and that his life expectancy is only 12.26 years.

Also, we must allow for the conflict in the medical expert evidence. The personal physician of the plaintiff said that the plaintiff's heart condition was seriously aggravated by the physical shock of the accident; the physician of the defendant, examining the plaintiff just three weeks before the trial of the suit, said he did not find any evidence of injury, attributable to the shock of the accident. This latter physician thought the plaintiff's heart was good for his age; the former physician thought the

plaintiff's earning capacity was reduced by 50 per cent.

We do believe that the plaintiff's earning capacity has been reduced some by his injuries from the accident, though he has mended well. We also allow for the fact that we have to go slower after attaining the age of 63; the peculiar occupation of plaintiff is one requiring much physical effort because of the wide area over which his rice purchases are made.

Plaintiff represents two large companies; he earns regularly from $20,000 to $30,000 per year net. We shall allow $1,000 per year, or a total of $12,260 for the 12.26 years. This is relatively small, but payment is now and not in the run of future years.

So, the total amount of the judgment we shall sign in favor of plaintiff in this case is $22,029.72. Let it be presented in due time.